[L. A. No. 3994. Department One.—June 20, 1917.]

INGEBORD SWENDSEN, Respondent, v. PACIFIC ELEC-TRIC RAILWAY COMPANY (a Corporation), Appellant.

DAMAGES—PERSONAL INJURIES — VERDICT NOT EXCESSIVE.—Under the circumstances of this case, a verdict of nineteen thousand five hundred dollars, on account of personal injuries inflicted on the plaintiff while riding as a passenger in one of the defendant's cars, is not excessive.

ID.—NEW TRIAL—MISCONDUCT OF JURORS—OBSERVING PLAINTIFF IN UN-CONSCIOUS CONDITION.—On the trial resulting in such verdict, the fact that the plaintiff, after fainting on the witness-stand, was observed by some of the jurors in a room adjoining the courtroom while she was in an unconscious condition and undergoing medical treatment, is not misconduct warranting a new trial.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner, W. R. Millar, and A. W. Ashburn, Jr., for Appellant.

Williams, Goudge & Chandler, and Charles L. Chandler, for Respondent.

SLOSS, J.—A train operated by the defendant collided with a car (also under defendant's control), in which plain-

tiff was riding as a passenger. The plaintiff was injured, and brought this action to recover damages. The defendant admitted liability, and the only matter in issue was the amount of damage. The jury returned a verdict for nineteen thousand five hundred dollars in plaintiff's favor. Judgment for this sum was entered. The defendant appeals from the judgment and from an order denying its motion for a new trial.

It is claimed that the verdict was excessive. There was testimony to show that, at the time of the accident, the plaintiff was twenty-nine years of age. Her expectancy of life was thirty-five years or more. She was a young woman in perfect health, of unusual vigor and vitality, and had been earning, as a masseuse, a yearly income of five thousand six hundred dollars. The trial took place ten months after the accident. During the intervening period the plaintiff had been unable to do any work, and she remained incapacitated at the time of the trial. Her condition had not improved during the interval; on the contrary, it was, in some respects, worse than it had been shortly after the accident. She was afflicted with a twitching of the face. The sense of feeling had gone from her right arm and from the right upper quarter of her body. Her power of speech was virtually lost. The sight of one eye was impaired, and she was unable to walk without the aid of a cane. One witness testified that she was not "like the same person in any particular"; another, that she seemed to be "a total wreck." From the testimony of medical experts, it remained doubtful how long the effects of the injury would last, or to what extent, if at all, there would be a recovery. She had suffered a great deal of pain, and was not free from pain at the time of the trial. She had been confined to her bed for nine weeks, had been in a sanatorium for three months, and had incurred an expense of over nine hundred dollars for medical treatment and nursing. In this state of the evidence, it is idle to argue that the amount of the damages awarded was in excess of the amount which the jury might reasonably and fairly have found to have been sustained.

During the trial the plaintiff fainted, and was removed from the courtroom to the witness-room. The court ordered a recess for ten minutes. When the trial was resumed counsel for defendant asked that the jury be discharged, upon the ground that certain members of the jury had looked through the door into the room in which plaintiff was lying uncon-

scious.  The court denied the motion.  The point was again raised upon motion for a new trial, the defendant presenting an affidavit of one of its attorneys, in which he deposed that, after plaintiff had fainted and been taken to the witness-room, affiant had seen several members of the jury looking into said room, in which the plaintiff was lying and was being attended by a physician.  The affiant states on information and belief that this action of the jurors constituted misconduct, and created in their minds a sympathy for the plaintiff, and a prejudice against the defendant, resulting in excessive damages.  It is now argued that the court erred in denying a new trial upon the ground of this alleged misconduct.  The appellant concedes that the mere fact that plaintiff fainted in the courtroom, a circumstance which was, of course, observed by the jurors, did not, in itself, require the granting of a new trial.  Indeed, the defendant itself asked an instruction (which was given) that the jury had ''a right to take into consideration the physical appearance of plaintiff while on the witness-stand and in the courtroom.''  The only additional fact that appears, then, is that after the plaintiff had thus lost consciousness, some of the jurors saw that she was receiving medical attention.  We are unable to see that this gave to the jurors any information beyond that which they would naturally have inferred from what had taken place before their eyes.  The motion for new trial was addressed to the sound discretion of the court, and it cannot be said that there was any abuse of discretion in refusing to disturb the verdict on the ground of this trivial occurrence.  (*Chicago & E. R. Co.* v. *Meech,* 163 Ill. 305, [45 N. E. 290].)  The statement of the affiant, on information and belief, that the conduct of the jurors had a prejudicial effect was a mere matter of opinion, and the court was not bound to give any weight to it.

No other point is made.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Victor E. Shaw, J., *pro tem.,* concurred.