[Civ. No. 9076. First Appellate District, Division Two.—December 8, 1933.]

ARTHUR HOLLANDER, Respondent, v. WILSON ESTATE COMPANY (a Corporation), Appellant.

Lovell & Lovell, Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Albert A. Rosenshine for Respondent.

STURTEVANT, J.—This is the second appeal in the above-entitled action. On the first appeal the action was remanded for a retrial on the issue of damages. (*Hollander* v. *Wilson Estate Co.*, 214 Cal. 582 [7 Pac. (2d) 177].) After the *remittitur* went down a trial was had on that issue. The jury again returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant has again appealed. It attacks numerous instructions. Before taking up those attacks it should be noted that in its decision the Supreme Court was called upon to determine the scope of the pleadings. Commencing on page 586 the court said: "The complaint was in two counts. The first declared upon the injury, its nature and permanency, with added allegations respecting the items of expense for medical care and attention, with a prayer for damages covering these elements. The second count repeated the first and added the following

allegations: 'II. That prior to the aforesaid injuries . . . the said plaintiff was the owner of and engaged in the business of dealing in and with rugs, carpets and furniture, from which business plaintiff derived . . . $1000.00 per month. III. That by reason of the premises plaintiff was unable, for . . . approximately . . . 8 months, to carry on and conduct said business. IV. That by reason thereof plaintiff has been further damaged in the sum of . . . $25,000.00.' '' Then after adverting to the proof that was introduced the court said: ''Under the above proof, the jury would have been justified in finding and doubtless did find that plaintiff, in addition to other damages suffered under the first count, suffered also a loss of profits to the extent of about $600 per month for a period of about six months.''

The defendant makes numerous objections to some of the instructions given at the request of the plaintiff. The instructions so attacked are as follows:

''XI.

''Plaintiff seeks judgment in the sum of eighty-five thousand nine hundred and sixty dollars and thirty-five cents, as follows: $2960.35 for hospital and medical expenses—also $8000 for loss of time and profits during the eight months' period he was compelled to remain away from his business, and also the sum of $75,000 general. damages for pain, suffering and injuries sustained, making a total sum of $85,960.35.

''XVI.

''In determining the amount of damages you will award to the plaintiff, you must take into consideration not only the loss and immediate damage arising from the injuries received at the time of the accident, but also the permanent loss and damage, if any, arising from any disability resulting to the plaintiff from the injury in question, which renders him less capable of attending to his business than he would have been if the injury had not been received.

''XVIII.

''I instruct you that in fixing the amount of damages to be awarded to the plaintiff, Arthur Hollander, you must take into account any loss of profits or earnings from the business of plaintiff, Arthur Hollander, sustained by him during the period when he was unable to work and attend to his

business as a result of the injury to him, not, however, to exceed the sum of $8,000.00 claimed in the second count of plaintiff's complaint.

## "XIX.

"I instruct you that in determining the amount of damages to be awarded to plaintiff, Arthur Hollander, you must take into account, in addition to the loss of profits or earnings during the period when plaintiff was unable to work and attend to his business by reason of the injury to him, such additional sums as will compensate plaintiff for his loss of time, that is, his inability, if any, to earn money, which has resulted from the injury, during the period since he has become able to work and attend to his business up to the present time, and whatever loss of time or loss of ability to earn money will result in the future, if any, and which can be traced by you to the result of said injury; the whole of said sum, however, not to exceed the amount prayed for in the first count of plaintiff's complaint, to-wit, $75,000.00.''

On the trial evidence was introduced which showed that immediately after the accident the plaintiff was unable to attend at his place of business. The length of that period of time rested on conflicting evidence. The plaintiff contended that it continued eight months. On the other hand, the defendant contended that it continued four months. In addition to these matters the plaintiff introduced proof to the effect that the injuries sustained in the accident had affected him physically in such a manner that he was becoming emaciated. He further contended his nervous system was so affected that he had become very weak, irritable and easily tired. In this connection he introduced proof to the effect that down to the date of the second trial he was unable to transact his business throughout the day, but had to lay off at times and on some occasions was compelled to leave his place of business and go home. In other words, that at the date of the second trial he was able to work only intermittently.

Before proceeding it should be stated that at the time of the accident the plaintiff was the sole owner and operator of a rug business in the Wilson building and that he attended to nearly all branches of the business. In January, after the accident, he gave up that business, organized a

corporation, and commenced a wholesale carpet business which he conducted with the assistance of certain employees. It is not claimed there was any evidence to the effect that the new organization was a one-man corporation or that the plaintiff was entitled to all of the profits in any one year nor how the balance sheets compared one year with another.

The first attack made by the defendant is that the jury was permitted to award damages for the alien element of plaintiff's "loss of time" after he was able to work, but as shown by the statement of facts that element was not alien. In his proof the plaintiff had attempted to show that the after-effects of the injury were such as to cause him to become greatly weakened, to become very irritable, and at times to cause him to leave his place of business and go home. Those symptoms so intermingled that at times the plaintiff suffered from loss of time while in his place of business, and again suffered from loss of time by being compelled to quit and go home. The defendant asserts instruction XIX "declares that 'loss of time' is the equivalent of 'loss of ability to earn money' ". It does not expressly do so. Furthermore, when plaintiff was too irritable or too weak to transact business with customers, it will be conceded he suffered an inability. And, when on certain occasions the plaintiff was compelled to go home leaving his place of business by reason of sickness, he also suffered an inability. The instruction went no further. Again, it is asserted the instruction was to the effect that every impairment of earning capacity results in loss of time. We think it is clear the instruction does not support the contention. Continuing the defendant asserts instruction number XI read in connection with instruction XIX in effect told the jury that loss of time was equivalent to loss of profits. To uphold that assertion is to place a strained meaning on the words used. Again, it asserts the instructions authorized the jury to make a double award for the same injury. It is not claimed that any instruction contained any express language to that effect. However, by a system of reasoning the defendant draws that conclusion. Picking up all of the instructions and reading them together, we think there is nothing that supports that conclusion. Finally, the defendant complains because

the jury was not directly instructed that it should not duplicate its award on any single element of damage. To that complaint there are two answers. If the defendant had wanted an instruction on the subject it should have asked for one, but it did not do so. The second answer is the instructions that were given were so drawn the jury must necessarily have understood it was not authorized to duplicate damages.

■ The second point made by the defendant is that the jury was permitted to award damages for the element of plaintiff's loss which rendered him less capable of attending to his business and to thereby duplicate and enhance the awards for loss of time and loss of ability to earn money. What has been said above regarding duplication we think is a sufficient answer to this point.

■ In its third point the defendant asserts that the jury was permitted to award damages for the alien elements of loss of business profits and loss of business earnings which were not attributable to the injuries. The point is without merit. No instruction referred to such elements, and the jury was not told to consider them, whether attributable to the injuries or otherwise. If the defendant means by "business profits" the "plaintiff's profits" that subject was not alien. While in business in the Wilson building the profits of that business were the earnings of this plaintiff and, for the same reasons, the earnings of this plaintiff were the profits. Defendant refers to instructions XVIII, XI, XIX and XVI in the order stated. Thereupon it asserts that the Supreme Court in its decision (214 Cal. 582 [7 Pac. (2d) 177]) excludes any recovery for loss of time or loss of earnings under the second cause of action. An examination of that decision does not support the contention.

■ In its fourth point the defendant asserts that the court erred to the prejudice of the defendant in giving instructions to the jury at the request of plaintiff which submitted issues to the jury where evidence to justify such submission was lacking, and which directed the jury to disregard the evidence. Under this point many contentions are made. We shall try to state each. It is asserted instruction XVIII is broader than XI and that it is broader than the allegations of the second cause of action. For all of the purposes of this

decision both contentions may be granted, but it does not follow that error was committed. It is next asserted that instructions XVIII, XVI, XIX and XXII were not warranted by the evidence. We think they were. If in any respect any part of any one of them contained matter foreign to the case the defendant has not pointed to that special matter and shown wherein the defendant was prejudiced thereby. More specifically presenting this point the defendant asserts that "The measure of damages for impairment of earning capacity is the difference between the amount which plaintiff was capable of earning before the injury and that which he is capable of earning thereafter." (17 C. J., p. 897.) It then asserts that while there was evidence of the plaintiff's earning capacity before the accident, there was "no evidence indicating his earnings from the business in which he later engaged". Hence defendant argues it was error to give instruction XI. Turning to that instruction, it will be noted it is addressed to the period immediately following the accident. As we have shown the proof was full and complete as to that period and the instruction complained of was not addressed to alien matters. The same attack is made on instruction XIX, but that instruction was addressed to mental and physical impairment. It was not error to give it. (*Treadwell* v. *Whittier*, 80 Cal. 574, 578 [22 Pac. 266, 13 Am. St. Rep. 175, 5 L. R. A. 498] ; *Shaw* v. *Southern Pac. R. R. Co.*, 157 Cal. 240 [107 Pac. 108] ; *Worden* v. *Central Fireproof Bldg. Co.*, 172 Cal. 94 [155 Pac. 839] ; 17 C. J. 1015.)

The last point presented is that the verdict was excessive. The verdict was for the sum of $25,000. The plaintiff in his brief states that the following injuries were received by him: The first, second and third lumbar vertebrae were fractured; the fourth cervical was crushed; the tip of the sacrum was fractured and there was also a fracture running up the right side of the sacrum, with separation. The coccyx was fractured and there was a fracture on the upper right acetabulum. In addition to this there was a deep lacerated wound about one and a half inches from the rectum, running inwards about two and a half inches. He was injured by shock and there were bruises over his whole body. He lay at the point of death for many days; he was immobilized with sandbags,

indeed, he could not be placed in a cast for ten days because he could not be moved. The cast was finally placed on him and he remained motionless and helpless in this cast for over two months, his neck held by a Thomas collar. He remained in the hospital unable to feed himself or attend to his bodily wants for nearly three months. He earned nothing and had no income until at least January 1, 1928. But more important and more horrible are the resulting changes to his life and character; and as to these changes there is not one word of contradiction in the record. In its reply the defendant does not question any of those statements. An examination of the record discloses these additional facts: At the time of the accident, April 23, 1927, the plaintiff was fifty-one years of age. He weighed at that time from 172 to 180 pounds. The last trial commenced November 16, 1932. At that time he weighed 145 pounds. Before the accident he was strong physically and of such a jovial nature that he was nicknamed "Happy". At that time he transacted nearly all of his own business. In view of the foregoing facts it may not be said as a matter of law that the verdict was excessive. (*Swendsen* v. *Pacific Electric Ry. Co.*, 175 Cal. 502, 503 [166 Pac. 21].)

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 6, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 5, 1934.