[S. F. No. 13862.   In Bank.—January 18, 1932.]

ARTHUR   HOLLANDER,   Respondent,   v.   WILSON
ESTATE COMPANY (a Corporation), Appellant.

Redman, Alexander & Bacon, Lovell & Lovell and Herbert Chamberlin for Appellant.

Albert A. Rosenshine for Respondent.

THE COURT.—Action for personal injuries. Verdict and judgment for $26,500 for plaintiff. Defendant has appealed.

Defendant is an estate corporation and owns the Wilson Building, a seven-story structure situated at 973 Market Street, San Francisco. It is equipped with one passenger and one freight elevator. On the twenty-third day of April,

1927, plaintiff was a tenant of practically all the fourth floor of said building, using it to carry on a wholesale and retail furniture, rug and carpet business. The building at said time had some fourteen tenants, all of whom used the passenger elevator as a means of ingress to and egress from it.

On said day respondent and one Scott took passage on said passenger elevator in said building and were being transported from the fourth floor thereof to the street entrance when, without warning or chance to escape, the elevator dropped to the basement. Respondent was severely and permanently injured to an extent which need not be here described; the other passenger and the operator were likewise hurt.

This suit was instituted and in general terms plaintiff alleged negligence on the part of defendant in the maintenance and operation of said elevator. However, the evidence at the trial tended to show that the drop was due to the fact that the hoisting cable had slipped off the sheave, due to a break in the shaft upon which the sheave revolved. The drop should have been arrested by a safety device and it appears that this apparatus was in an unsafe condition and that defendant was negligent in not maintaining said device in proper condition.

The question of first importance upon this appeal is the propriety of the court's action in striking from the answer of defendant certain provisions of the lease between plaintiff and defendant which defendant set up as a defense to the action. The premises demised were "that certain fourth floor, with the exception of one office known as Room 400, of the building known as the Wilson Building. . . . " The parties covenanted in said lease that the lessors should not be liable for damages "for personal injuries or damages to any person or persons whatever, arising from or occasioned by any cause, matter or thing whatsoever; and said Lessee hereby covenants and agrees to hold said Lessor free and harmless of and from any and all damages or claims or liability for damages of every kind whatever, either to person or property and howsoever caused, arising during the term of this lease . . . in or about or connected with this tenancy or the occupancy of said demised premises".

The first clause of said quotation is plainly broad in its scope but, when read in connection with the remainder of the paragraph, it is clear that the parties were contracting "in and about" or "connected with" the "tenancy" and the "occupancy of said demised premises". In a remote sense, of course, the elevator is a means of "connection" between the street and the demised premises; it is a means of ingress to and egress from the premises but the elevator is in no sense demised or put under the control or operation of the lessee. The seven stories were occupied by other tenants of the building and the elevator was as much connected with the premises occupied by them as with the premises occupied by plaintiff. The elevator was owned, controlled, operated and maintained exclusively by the defendant. It can hardly be supposed to have been a subject within the scope of the lease. That any tenant would pay $325 per month for the occupancy of these premises where the means of ingress to and egress from them was an elevator in the exclusive control of a person without obligation of any kind on his part to use any care whatsoever to maintain it in a safe condition for the use of himself and the public generally is unbelievable.

Public elevators are the subject of safety laws and regulations and they are likewise subjected to rigid and regular inspection by state authorities. It is contrary to sound construction to say that said instrument had in contemplation the release from liability for damages for personal injuries arising from the negligent operation or maintenance of this public elevator. The provisions of section 1648 of the Civil Code are here applicable: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." There was no error in said ruling of the court.

This conclusion renders unnecessary a discussion of whether such an elevator is or is not a common carrier within the meaning of section 2175 of the Civil Code and also whether or not under the provisions of section 1668 thereof, the contract here, if given the broad construction contended for, would be void as against public policy. Other important questions arising from the introduction and reception of evidence will now be discussed.

■ Respondent placed several witnesses on the stand, all of whom testified over objections to hearing "grinding noises" and similar sounds in the operating mechanism of the elevator. The time fixed by these witnesses ranged from five days prior to the accident down to and including that day itself. We see no error in the admission of this testimony. Unless too remote, being directed to the condition of the instrumentality causing the accident, this class of evidence is admissible.

■ These witnesses also testified to having mentioned this condition to the operator in charge, a servant of appellant. There was no error in the admission of this testimony for it had the legitimate object of imputing notice thereby to the owner and it sufficiently appears from the evidence that the operator had such authority as would authorize the imputation of such notice.

■ But the respondent pursued its inquiry of these witnesses further by eliciting over objections answers from the operator given to the witnesses to the effect that the owner had been warned and that he, the operator, was himself "scared" about the condition of the elevator. We think the eliciting of this latter information was error. It was no part of the *res gestae* and was not concerning a subject the operator could have had authority upon from his employer. This error became more pronounced when the court, over repeated objections, permitted a line of witnesses to take the stand and contradict the testimony of the operator, who upon the trial denied said statements previously attributed to him. This was clearly a descent into the field of hearsay and was the impeachment of a witness on a purely collateral matter.

How serious these errors were, in the face of the negligence of defendant, is hard to discern. But we think more serious error was committed by the court below growing out of the following circumstances:

■ The complaint was in two counts. The first declared upon the injury, its nature and permanency, with added allegations respecting the items of expense for medical care and attention, with a prayer for damages covering these elements. The second count repeated the first and added the following allegations: "II. That prior to the aforesaid injuries . . . the said plaintiff was the owner of and engaged

in the business of dealing in and with rugs, carpets and furniture, from which business plaintiff derived . . . $1000.00 per month. III. That by reason of the premises plaintiff was unable, for . . . approximately . . . 8 months, to carry on and conduct said business. IV. That by reason thereof plaintiff· has been further damaged in the sum of . . . $25,000.00.''

The first impression, upon examination of these allegations, might be that the plaintiff was attempting to set up a cause of action for damages to his business resulting from other causes than the said injuries reccived, but upon closer scrutiny it is clear that they are no more than a claim for eight months' loss of profits from said business at the rate of $1,000 per month, purely as a result of the personal injuries received. Under the proof, however, plaintiff and his witnesses showed that his earnings prior to the injury were approximately $600 per month and also that plaintiff was unable to work during the period intervening between the date of injury, April 23d, and November 1st of the same year, upon which latter date he disposed of his whole business and entered an allied business at another location in the city. Under the above proof, the jury would have been justified in finding and doubtless did find that plaintiff, in addition to other damages suffered under the first count, suffered also a loss of profits to the extent of about $600 per month for a period of about six months.

But plaintiff, over objection, proved that the elevator was not repaired for some five weeks after the accident and also proved that during his disability he had paid out the sum of $1400 for clerk hire and expense; also that when he sold his business on November 1st he did so at a loss of $4,000. The admission of this class of evidence was erroneous and we believe resulted in prejudice to the defendant. As already stated, under the pleadings, there is no cause of action for loss of business other than loss of profits during the period alleged. If plaintiff received from the jury compensation in this behalf, and it must be presumed that he did, it was manifestly improper to give him also other damages which included clerk hire and loss on the sale of the business, for these elements were either a duplication of damages already allowed or related to an issue alien to the complaint.

---

The other alleged errors complained of need not be considered as they will not arise on a retrial of the cause. That plaintiff suffered serious and permanent injuries is undisputed; that the defendant maintained and operated the elevator at the time of the accident in a negligent manner is also established. There is, therefore, no need of a retrial of any issue save alone the issue as to the amount of damage suffered by plaintiff. Accordingly the judgment is reversed and the cause is remanded for retrial of said issue only.

Rehearing denied.