Filed 8/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MORLIN ASSET MANAGEMENT LP et al., <br><br>       Cross-complainants and Appellants, <br><br>     v. <br><br> EDWARD M. MURACHANIAN, <br><br>       Cross-defendant and Respondent. | B259800 <br><br> (Los Angeles County Super. Ct. No. BC504083) |

APPEAL from judgments and an order of the Superior Court for the County of Los Angeles.  Gregory Keosian and Donna Fields Goldstein, Judges.  Affirmed.

Horvitz & Levy, Mitchell C. Tilner, Stephen E. Norris; Kuluva, Armijo & Garcia and Sherry L. Grguric for Cross-complainants and Appellants.

Williams Iagmin and Jon R. Williams for Cross-defendant and Respondent.

_____

## SUMMARY

This is an appeal from the grant of summary judgment on two cross-complaints for indemnity and apportionment of fault. Plaintiff Jose Luis Anguiano filed this lawsuit after he was injured when he slipped on the stairs in the common area of a commercial building. He was at the building to clean the carpets in the dental suite of a tenant in the building. Plaintiff sued the owners of the building and its managers, Morlin Asset Management LP and Morlin Management Corporation (the landlords), for negligence and premises liability. The landlords each filed virtually identical cross-complaints against Edward Murachanian (the tenant), a dentist who rents an office suite in the building. The tenant had hired plaintiff's employer to clean the carpets in his second-floor suite.

The tenant moved for summary judgment on the cross-complaints on the grounds that plaintiff claimed his injury was caused by a defect in the common areas of the building for which the landlords had the exclusive right of management and control, and the tenant's lease provided he was only liable to indemnify the landlords for injuries incurred within his suite.

The landlords opposed the motion, arguing there were material disputed facts, including whether plaintiff was at fault for spilling a bucket of soapy water in which he slipped and fell; whether the tenant was at fault for failing to fulfill his duty under the lease to notify the landlords that someone was coming to clean the carpet, thus depriving them of an opportunity to take steps to spare plaintiff from carrying heavy buckets of water up the stairway; and whether the stairway was defective. The landlords contended the determination of their rights to indemnity and apportionment of fault rested on how these disputed facts were resolved.

The trial court granted the tenant's motion for summary judgment, finding the lease obligated the tenant to indemnify the landlords only against claims for injuries occurring within the tenant's office suite, not in the common areas.

We affirm the judgments, as well as the court's order awarding attorney fees to the tenant.

## FACTS

Plaintiff was an employee of Arax Carpet Co. Cross-defendant tenant engaged Arax to clean the carpets in his dental suite. Arax sent plaintiff and another man to do the work on October 4, 2012.

As he walked up a flight of stairs, plaintiff slipped, falling forward and suffering severe injuries. Plaintiff sued the landlords, claiming the stairs presented a dangerous condition because the treads and risers did not conform to the building code or industry standards in various respects.

During discovery, these facts came to light:

A medical report from Dr. Daniel Skenderian stated that, while carrying soapy water up a flight of stairs, plaintiff "had apparently spilled some water and slipped and fell face first, hitting his face and jaw." Dr. Skenderian's report stated that plaintiff "volunteered that there was soap in the water that made the spills on the stairs more slippery." Dr. Skenderian later testified at his deposition that plaintiff corroborated the information in the medical records. Dr. Skenderian's recollection of what plaintiff told him was that "he was carrying soapy water, water spilled, and he stepped in the spill and slipped." A medical report and deposition testimony from Dr. Michelle Ward stated essentially the same thing: that plaintiff told her that he was carrying buckets of soapy water upstairs; the "bucket caught on the stair, water spilled and on his next step he slipped and fell forward."

When plaintiff was asked in discovery to state facts upon which he based any contention that his actions or omissions were not the sole cause of the incident, plaintiff responded with the same allegations he made in the complaint about the dangerous condition of the stairs, in violation of statute or industry standards, and said: "As he climbed [the] stairs carrying heavy buckets of water, Plaintiff made contact with one or all of these dangerous conditions causing him to fall with great force on the steps."

Ivan Bell, the building engineer for the property, was deposed and testified that he told the tenant he wanted to be notified "whenever Arax comes out" so that he could "make sure the hoses were run properly." (This was because of a previous occasion

3

when he "caught them [(Arax)] with the hose going up the stairs," and he told the tenant that "it was a problem the way they were putting the hose" on that occasion.) Mr. Bell testified that he "saw them [(Arax)] do it wrong," and he told the tenant that " '[y]ou have to let me know every time they come.' "

In April and May 2014, the landlords filed cross-complaints against the tenant for equitable indemnity (alleging any injuries to plaintiff were caused by the tenant); apportionment of fault; declaratory relief; and express indemnity under the terms of the lease. The landlords alleged the lease required the tenant to defend and indemnify them, and to purchase liability insurance naming them as additional insureds.

In June 2014, the tenant moved for summary judgment. He contended the lease agreement did not provide express indemnity for plaintiff's alleged injuries because the accident did not occur within his leased premises, but instead within the common areas; he did not cause or contribute to plaintiff's alleged injuries, so there was no basis for implied or equitable indemnity; and at all times he procured the necessary liability insurance naming the landlords as additional insureds.

The tenant's evidence included, among other evidence, a copy of the lease, containing this indemnification clause:

"8.7 Indemnity. Except for Lessor's gross negligence or willful misconduct, ***Lessee shall indemnify, protect, defend and hold harmless*** the Premises, ***Lessor and its agents***, Lessor's master or ground lessor, partners and Lenders, ***from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys' and consultants' fees expenses and/or liabilities arising out of, involving or in connection with, the use and/or occupancy of the Premises by Lessee.*** If any action or proceeding is brought against Lessor by reason of any of the foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense. Lessor need not have first paid any such claim in order to be defended or indemnified." (Italics and boldface added.)

The tenant was deposed six days after he filed his motion for summary judgment. He testified that several years before plaintiff's accident, Mr. Bell "asked us to inform

4

them when we were going to have any work done such as a carpet cleaning or air conditioning service when we were having somebody come over onto the premises." "We'd notify Ivan Bell. So if he had any concerns or needed to be there when any of this work was being done by any of the contractors he had ample time and notice to be there." The tenant did not know whether his office staff notified Mr. Bell about the carpet cleaning that took place on the date of plaintiff's accident.

The landlords opposed the motion for summary judgment, contending the evidence established "that plaintiff created the condition which caused his fall"; that plaintiff was acting as an agent for the tenant; and that the tenant was responsible for plaintiff's actions. The landlords contended there were triable issues, including the extent of the agency and whether the tenant was negligent for creating the condition that caused or contributed to plaintiff's fall and injuries.

The trial court granted the tenant's motion for summary judgment on the landlords' claim for express indemnity, finding the lease obligated the tenant to indemnify the landlords only against claims "involving the Premises, which has a limited definition and does not include 'stairwells.' " Because it was undisputed that plaintiff was injured on the stairwells, within the common areas (defined as "all areas and facilities outside the Premises," including stairwells, the control of which is expressly reserved to the landlords), the trial court concluded the tenant had no indemnification obligation.

The court also granted summary judgment on the landlords' claims for equitable indemnity and apportionment of fault, reasoning it was undisputed that the tenant did not exercise any control over the common areas. The court rejected the landlords' agency theory, finding no law or facts to support the existence of an agency relationship between the tenant and plaintiff.

Judgments were entered in the tenant's favor on the cross-complaints, and the trial court awarded the tenant $12,000 in attorney fees. The landlords filed timely appeals from the judgments and the attorney fee order.

5

Along with their opening brief, the landlords requested, and we now grant, judicial notice of documents showing plaintiff settled with the landlords and his complaint was dismissed with prejudice on June 2, 2015.

## DISCUSSION

As we explain below, we conclude as a matter of law that the indemnification clause in the lease does not extend to claims or liabilities arising out of this accident in the common areas over which the tenant had no control. Summary judgment was therefore proper in this case.

### 1. The Standard of Review

We review an order granting summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

A cross-defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "In performing our de novo review, we must view the evidence in a light favorable to [the landlords] as the losing party [citation], liberally construing [their] evidentiary submission while strictly scrutinizing [the tenant's] own showing, and resolving any evidentiary doubts or ambiguities in [the landlords'] favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

### 2. The Lease Provisions

We quoted above the indemnity clause in the parties' lease, requiring the tenant to indemnify and defend the landlords and their agents (except for their gross negligence or willful misconduct) against all claims and liabilities "arising out of, involving or in connection with, the use and/or occupancy of the Premises by [tenant]."

6

Both parties variously invoke several other provisions of the lease, and both point out that the lease must be construed as a whole. (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].)

The tenant points to the definitions of lease terms, including the leased premises, which are limited to suite No. 204; the common areas, which are outside the suite and include the stairwells; and provisions giving the landlords exclusive control and management of the common areas and the responsibility for keeping the common areas in good condition and repair. The landlords point to a provision exempting them from all liability for injury or damage to the person or property of the tenant or the tenant's employees, contractors or others "in or about the Premises," from any cause, whether the injury results from conditions arising "upon the Premises . . . or from other sources or places," and a provision requiring the tenant to maintain specifically described liability insurance. The landlords also point to the rules and regulations appended to the lease and initialed by the parties. These include a rule stating that the tenant "shall not employ any service or contractor for services or work to be performed in the Building except as approved by [landlords]."

### 3.     The Indemnity Clause Bars the Cross-complaints.

The tenant agreed to indemnify the landlords for claims "arising out of, involving or in connection with" his use or occupancy of the dental suite. The landlords contend the term "arising out of" should be liberally construed in favor of the promisee (here, the landlords). For this proposition, the landlords cite *Vitton Construction Co., Inc. v. Pacific Ins. Co.* (2003) 110 Cal.App.4th 762, 766 (and many other insurance cases), where the court observed that " 'California courts have consistently given a broad interpretation to the terms "arising out of" or "arising from" in various kinds of insurance provisions.' " Here, the landlords say, "[w]ere it not for [the tenant's] use of the leased premises to operate his dental office, including his hiring of Arax to clean the carpet within the leased premises, [plaintiff] would not have been ascending the stairwell and would not have been injured."

7

But this is not an insurance case. And as the Supreme Court instructs, "[t]hough indemnity agreements resemble liability insurance policies, rules for interpreting the two classes of contracts do differ significantly." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 (*Crawford*) [a "public policy concern influences to some degree the manner in which noninsurance indemnity agreements are construed"].) "For example, it has been said that if one seeks, in a noninsurance agreement, to be indemnified . . . regardless of the indemnitor's fault . . . language on the point must be particularly clear and explicit, and will be construed strictly against the indemnitee." (*Ibid.*) In accordance with this principle, the indemnification clause cannot be read as the landlords suggest.

Of course, "[i]n a remote sense," the accident would not have occurred if the tenant had not hired Arax to clean the carpets in his dental suite, and in that sense, the accident could be said to arise from the tenant's use of the suite. (See *Hollander v. Wilson Estate Co.* (1932) 214 Cal. 582, 584, 585 [construing the tenant's agreement to indemnify for claims " 'arising . . . in or about or connected with' " the demised premises; "[i]n a remote sense, of course, the elevator [which dropped to the basement injuring the tenant] is a means of 'connection' between the street and the demised premises"; but elevator was "owned, controlled, operated and maintained exclusively by the defendant" and "can hardly be supposed to have been a subject within the scope of the lease"]; see also *City of Oakland v. Oakland etc. Sch. Dist.* (1956) 141 Cal.App.2d 733, 735, 737 (*City of Oakland*) [construing the lessee's agreement to indemnify the lessor for claims " 'arising out of the use and occupation of *the premises* by the lessee ' "; the indemnity clause did not apply to an injury incurred when a third party stepped in a hole in a walkway used for ingress and egress to and from the leased premises].)

To say the accident would not have occurred if the tenant had not hired Arax to clean the carpets does not mean the standard indemnity clause applies here. At oral argument, counsel for the landlords conceded that the landlords could not seek indemnity if a defect in the stairs for which they were responsible caused the accident. They point out that cases such as *Hollander* and *City of Oakland* involve circumstances where the

8

accident is indisputably caused by the lessor's negligent maintenance of the common area over which the lessor had exclusive control. This case is different, they say, because the tenant "offered no evidence that [the landlords] negligently maintained the stairwell or that a defect in the stairwell caused the accident." Further, they say, they offered evidence the accident was caused by plaintiff's negligence, Arax's negligent supervision of plaintiff, or the tenant's negligence in failing to notify the landlords of the carpet cleaning. These arguments are unavailing.

We are not persuaded the distinctions the landlords proffer have any relevance to the scope of the indemnification clause, an issue of contract interpretation that is unaffected by the ultimate cause of the accident.[1] The factual questions the landlords raise about plaintiff's negligence and Arax's negligent supervision relate only to the dispute between plaintiff and the landlords, which the parties have settled – not to the scope of the tenant's contractual indemnification obligation. Nor do the factual issues about the tenant's failure to notify Mr. Bell about the carpet cleaning have any relevance to the scope of the tenant's obligation to indemnify the landlords under the lease. At most, the failure to notify could arguably constitute breach of a rule in the lease (a finding we do not make), but no breach of contract claim is before us.

---

[1] At oral argument, counsel for the landlords cited *National Fire Ins. Co. v. Federal Ins. Co.* (N.D.Cal. 2012) 843 F.Supp.2d 1011 for the proposition that a lessee had a duty to indemnify a lessor for an accident that did not occur in the leased premises. In that case, a small child was killed when she fell off a hotel balcony, after wandering away from a party catered by an on-site restaurant in a hotel ballroom being used by the restaurant under the terms of its lease with the hotel. The restaurant's insurer sought reimbursement of its defense and settlement costs from the hotel's insurer. Cross-motions for summary judgment by both insurers were denied. (*Id.* at pp. 1012-1013.) The case turned on the court's interpretation of insurance policies, including questions whether the restaurant's insurer was obliged to defend and indemnify the hotel as an additional insured, whether the hotel had to first exhaust its self-insured retention, and whether the hotel's insurer provided only excess coverage with no obligation pending exhaustion of the restaurant's coverage limits. The short answer to the landlords' reliance on that case is simple: the principles governing insurance coverage are not the same principles governing noninsurance indemnity agreements. (See *Crawford, supra,* 44 Cal.4th at p. 552.)

Finally, to the extent the landlords are suggesting they have a right to equitable indemnification, they are mistaken. The Supreme Court has held otherwise: "[W]hen parties by express contractual provision establish a duty in one party to indemnify another, 'the extent of that duty must be determined from the contract and not from the independent doctrine of equitable indemnity.' " (*E. L. White, Inc. v. Huntington Beach* (1978) 21 Cal.3d 497, 508, italics omitted; see also 5 Witkin (10th ed. 2005) Summary of Cal. Law, Torts, § 123, p. 225 ["An express indemnity clause, rather than the equitable principles behind comparative indemnity, governs the scope of any duty to indemnify."].)

We hold that under the indemnity clause in this case, the injury to a third party that occurred outside the dental suite, in a common area over which the landlords have exclusive control, did not arise out of the tenant's use of the dental suite. It does not matter that the accident would not have happened but for the tenant hiring the third party to clean the carpets in the dental suite, and that the third party may have been at fault. The connection between the tenant's use of his suite and the accident in the stairwell over which the tenant had no control is too remote to have been within the contemplation of the parties when they entered into the lease. This construction of the indemnity clause is fully consistent with the law governing the interpretation of indemnification provisions (*Crawford, supra,* 44 Cal.4th at p. 552), and with the *Hollander* and *City of Oakland* cases construing similar language, albeit in distinguishable circumstances. The trial court properly granted summary judgment.

The only basis the landlords assert for reversal of the attorney fee order is that the summary judgments were erroneous. Because we have concluded otherwise, we likewise affirm the attorney fee order.

## DISPOSITION

The judgments and the order awarding attorney fees are affirmed. Respondent shall recover his costs on appeal.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.             FLIER, J.