Filed 5/21/21  Paul Ryan Associates v. Catlin Specialty Ins. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAUL RYAN ASSOCIATES,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CATLIN SPECIALTY INSURANCE CO.,<br><br>        Intervener and Appellant. | A156755<br><br>(San Francisco County Super. Ct. No. CGC-09-486995) |

Parties to a construction contract for a residential remodel entered into a contractual indemnification provision that provided indemnity for a noncontracting party.  We conclude: (1) based on the contract language, the indemnification provision is limited to third party claims and thus does not encompass claims asserted by a contracting party against the noncontracting indemnitee; (2) the indemnification provision does not preclude the noncontracting party from bringing an equitable indemnity claim against the contractual indemnitor; and (3) the trial court did not abuse its discretion in issuing an attorney fee order denying fees.

1

BACKGROUND[1]

In 2005, Paul Ryan Associates (Contractor) and 44 Normandie, LLC (Owner) entered into a construction contract for a residential remodel project (the Construction Contract). Owner also entered into a separate contract with Linbeck Group, L.P. (Owner's Representative) in which Owner's Representative agreed to perform project management services for the remodel.

Disputes arose. In 2009, Owner terminated Contractor and subsequently sued, alleging Contractor performed defective work. In 2016, following a bench trial, the trial court found Contractor liable for breach of contract and negligence, and awarded Owner more than $7 million in damages.

Owner's lawsuit also asserted claims against Owner's Representative, alleging it failed to properly manage Contractor. In 2014, Owner's Representative agreed to settle Owner's claims for $2.6 million. The settlement was paid by Owner's Representative's insurer, Catlin Specialty Insurance Company (Insurer).[2]

Insurer subsequently filed a complaint in intervention against Contractor seeking, as Owner's Representative's subrogee, indemnification for its settlement payment to Owner. Insurer's complaint incorporated a prior complaint filed by Owner's Representative asserting claims against Contractor for indemnity pursuant to the Construction Contract and for equitable indemnity. Insurer and Contractor filed cross-motions for

---

[1] We recite only those background facts relevant to our resolution of the appeals.

[2] Contractor sought, and received, an offset for this payment to Owner's multimillion dollar damages award.

2

summary judgment/summary adjudication on Insurer's complaint. The trial court found Contractor was not obligated to indemnify Owner's Representative, granted Contractor's motion and denied Insurer's motion, and later entered judgment for Contractor on Insurer's complaint. Insurer's appeal challenges this order.

Contractor then sought prevailing party contractual attorney fees and costs from Insurer. The trial court denied Contractor's motion. Contractor's appeal challenges this order.

## DISCUSSION

I. *Indemnity*

We review de novo the trial court's order on the parties' motions for summary judgment/summary adjudication. (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385.)

"An indemnity obligation arises from two general sources. First, it may arise from 'express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances.' [Citation.] Courts interpret contractual indemnity provisions under the same rules governing other contracts, with a view to determining the actual intent of the parties. [Citations.] [¶] Indemnity may also arise based on equitable considerations. [Citation.] Unlike contractual indemnity which looks to the parties' intent, equitable indemnification focuses on principles of fairness and justice and 'is designed to apportion loss among tortfeasors in proportion to their relative culpability . . . .' " (*Maryland Casualty Co. v. Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856, 864 (*Maryland Casualty*).)

A. *Contractual Indemnity*

The trial court found that the Construction Contract's indemnity provision did not require Contractor to indemnify Owner's Representative against Owner's claims. Insurer challenges this finding.

The Construction Contract's indemnity provision states: "To the fullest extent permitted by law, Contractor shall indemnify, defend, protect and hold harmless Owner, Owner's Lender, if any, Architect, Owner's Representative,[3] Christopher M. Bass, and each of the aforementioned parties' respective affiliated companies, partners, successors, assigns, heirs, legal representatives, devisees, officers, directors, shareholders, employees and agents (collectively, 'indemnitees') for, from and against any and all claims and liabilities (including, without limitation, claims and liabilities relating to personal injury, bodily injury or property damage) directly or indirectly arising out of, resulting from or related to this agreement or the Work (including, without limitation, any failure by Contractor to properly perform the Work in accordance with the Contract Documents, or negligence or misconduct of Contractor or Contractor's officers, agents, employees, or subcontractors), even if such claims or liabilities arise in part from the negligence of any indemnitee; provided, however, Contractor's obligation under this paragraph will not apply to claims or liabilities arising from the sole active negligence or intentional misconduct of any indemnitee." (Capitalization altered, emphasis omitted.)

"Indemnity agreements are construed under the same rules that govern the interpretation of other contracts. [Citation.] Accordingly, the contract must be interpreted to 'give effect to the mutual intention of the parties . . . .'

_____

[3] "Contractor," "Owner," and "Owner's Representative" have the same meaning in the Construction Contract as they do herein.

(Civ. Code, § 1636.) The intention of the parties is to be ascertained from the 'clear and explicit' contract language. ([Civ. Code,] § 1638.)" (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 600, fn. omitted (*Alki Partners*).)[4]

In relevant part, the indemnity agreement provides that Contractor will "indemnify . . . and hold harmless . . . Owner's Representative . . . against any and all claims and liabilities . . . arising out of . . . or related to . . . the Work" performed by Contractor. Insurer contends this clear language encompasses Owner's claims against Owner's Representative for failure to properly supervise Contractor's work.

However, as Contractor argues, numerous cases have construed the terms "indemnify" and "hold harmless" as generally applying only to claims brought against the indemnitee by a third party. " 'A clause which contains the words "indemnify" and "hold harmless" is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons.' " (*Zalkind, supra,* 194 Cal.App.4th at p. 1024; accord, *Alki Partners, supra,* 4 Cal.App.5th at p. 600; *Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 14, 20 (*Carr*); *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 555 (*Dream Theater*); *Building Maintenance*

---

[4] Contractor also relies on a declaration from one of its officers averring that Contractor did not intend the indemnity provision to apply to Owner's claims against other indemnitees. The trial court did not rely on this evidence, and neither do we. " 'California recognizes the objective theory of contracts [citation], under which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation" [citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' " (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1022, fn. 2 (*Zalkind*).)

5

*Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1029 (*Building Maintenance*); *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 969 (*Myers*).)

To be sure, parties may agree to an indemnity provision that encompasses both third party claims and claims asserted by contracting parties. (*Zalkind, supra,* 194 Cal.App.4th at p. 1024 ["Although indemnity generally relates to third party claims, 'this general rule does not apply if the parties to a contract use the term "indemnity" to include direct liability as well as third party liability.' "]; *Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1179 (*Hot Rods*) ["Indemnity provisions typically refer to third party claims, but if the parties so intend, such provisions may also encompass direct claims."].) To determine whether the parties intended to so broaden the indemnity coverage, courts examine the contractual language, as we discuss in more detail below.

Before proceeding, we address Insurer's suggestion, raised in a footnote, that Owner's claim against Owner's Representative is "more akin to a third-party claim" because Owner's Representative is not a party to the contract. First, the contention is forfeited: "An appellant cannot bury a substantive legal argument in a footnote and hope to avoid waiver of that argument." (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419.) Second, even if we considered it, we would reject it. Insurer's argument misconstrues the "claim" at issue in the phrase "third party claim." There are two claims relating to indemnification: the *underlying claim*—the claim asserted against the purported indemnitee, for which indemnification is sought—and the resulting *indemnity claim*. It is the identity of the party asserting the underlying claim that determines whether it is a third party claim, not the identity of the party asserting the indemnity claim. Thus, it is

6

immaterial that Owner's Representative—the party asserting the indemnity claim—is not a contracting party. The relevant question is whether Owner—the party asserting the underlying claim—is a contracting party; it is, and therefore its claim against Owner's Representative is not a third party claim.[5]

We now turn to the language of the Construction Contract. Insurer emphasizes the indemnity provision's application to "any and all claims and liabilities (including, without limitation, claims and liabilities relating to personal injury, bodily injury or property damage)," arguing this broad language is not limited to third party claims. However, courts have found similar language so limited. In *Myers,* the court held an indemnification provision that was "not limited to bodily injury or property damage, and embraces 'any, all, and every claim' . . . was intended to deal only with third-party claims." (*Myers, supra,* 13 Cal.App.4th at p. 974.) In *Carr,* the indemnification provision applied to " 'all claims, damages, losses and expenses including attorney fees arising out of the performance of the work described herein. . . .' " (*Carr, supra,* 166 Cal.App.4th at p. 19, italics omitted.) The court noted that, "At first glance, the language . . . seems to extend beyond third-party claims," but after comparing it to language construed in other cases, concluded it was limited to third party claims. (*Id.*

_____

[5] We recognize that the cases discussed herein are factually distinct from the one before us in that all involved underlying claims asserted by one contracting party *against another contracting party.* Thus, some of the analysis of the cases is inapplicable here, such as whether the parties intended the indemnity coverage to apply to claims for breach of the contract containing the indemnity provision. (E.g., *Alki Partners, supra,* 4 Cal.App.5th at p. 602 [considering whether indemnity provision extended to "actions seeking to enforce the Agreement itself"].) Nonetheless, the analysis of when an indemnity provision's coverage extends beyond third party claims to also include claims asserted by contracting parties is directly relevant and instructive in our case.

at pp. 20, 23.) In *Building Maintenance,* the indemnification provision covered " 'any and all losses, liabilities, damages, claims, demands, suits, actions, proceedings, subrogations and expenses including court costs and reasonable attorney's fees, related in any way to this Order [contracting for services], or the services performed or goods delivered under this Order. . . .' " (*Building Maintenance, supra,* 55 Cal.App.4th at p. 1022.) Again, the court found the provision limited to third party claims. (*Id.* at p. 1030.)

In contrast, where courts have concluded an indemnity provision is not limited to third party claims, the language is markedly different. In *Hot Rods,* the contract provided indemnification for " 'any claims, demands, penalties, fees, fines, liability, damages, costs, losses, or other expenses including, without limitation, reasonable environmental consulting fees and reasonable attorney fees' "; defined " 'Claim' " as " 'any claim or demand by any Person for any alleged liabilities, whether based in contract, tort, implied or express warranty, strict liability, criminal or civil statute, Permit, ordinance, regulation, common law, equity or otherwise' "; and defined " 'Person' as 'any person, employee, individual, corporation, unincorporated association, partnership, trust, federal, state or local governmental agency, authority or other private or public entity.' " (*Hot Rods, supra,* 242 Cal.App.4th at p. 1181.) The court reasoned this "extremely broad language" suggested the parties did not intend to limit the coverage to third party claims. (*Id.* at p. 1182.) The court further noted, "if the language was meant only to cover third party claims, there seems little point in including the phrase 'damages, costs, losses' when those would all have been covered already. That language seems entirely duplicative of 'any claims, demands, penalties, fees, fines, liability,' if the provision is intended to apply only to third party claims." (*Id.* at p. 1181.) The indemnification provision here

8

lacks the expansive coverage language of *Hot Rods,* and instead is closer to the provisions considered in *Myers, Carr,* and *Building Maintenance.*

In cases lacking such expansive language, courts have found an indemnity provision extends beyond third party claims where the contract contained other clear indicia the parties intended such coverage. In *Dream Theater,* the indemnification provision stated the indemnitors "are obligated to indemnify against all losses 'whether or not arising out of third party Claims.' " (*Dream Theater, supra,* 124 Cal.App.4th at p. 556.) In *Zalkind,* the indemnification agreement included specific provisions regarding notice, defense obligations, and subrogation which expressly applied only to indemnification claims resulting from third party claims: " 'In the event of any claim for indemnification hereunder resulting from or in connection with any claim or legal proceeding by a third party . . . ;' " " '[i]n connection with any claim giving rise to indemnity hereunder that results or may result from or arises or may arise out of any claim or legal proceeding by a person who is not a party to this Agreement . . . ;' " " '[i]n the event that an indemnifying party pays all or any portion of a third party claim or demand concerning which the indemnified party submits a claim for indemnification . . . .' " (*Zalkind, supra,* 194 Cal.App.4th at p. 1028.) As the court reasoned, the language clarifying that these provisions applied only to third party claims "would not be necessary if indemnification by definition meant only third party claims." (*Ibid.*)[6] In *Wilshire-Doheny,* a corporation sued two of its own

---

[6] The indemnification provision also defined damages expansively— " 'whether or not they have arisen from or were incurred in or as a result of any demand, claim, action, suit, assessment or other proceeding or any settlement or judgment' "—which the court concluded "suggests" damages were "not limited to third party claims." (*Zalkind, supra,* 194 Cal.App.4th at p. 1028.)

officers; the officers prevailed and sought recovery of their attorney fees and costs pursuant to indemnity agreements with the corporation. (*Wilshire-Doheny Associates Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380, 1383–1387 (*Wilshire-Doheny*).) One of the indemnity provisions "specifically applies to an 'action or suit by or in the right of the corporation to procure a judgment in its favor.' " (*Id.* at p. 1396.) As the court noted in construing the same language (appearing in a statute authorizing certain corporate indemnification of officers and employees), such a provision "is not, by its terms, limited in application to third party lawsuits." (*Id.* at p. 1390.) The Construction Contract's indemnification provision contains no similar indicia of an intent to apply indemnification beyond third party claims.[7]

In sum, based on our review of the Construction Contract's language and applicable analyses in similar cases, we conclude that the indemnification provision is limited to third party claims. The claim by

---

[7] We acknowledge language in some cases suggesting that indemnification provisions apply beyond third party claims unless contractual language indicates otherwise. (See *Wilshire-Doheny, supra,* 83 Cal.App.4th at p. 1396 ["There is nothing in the language of any of the three indemnity provisions specifically limiting their application to third party lawsuits."]; *In re Marriage of Vaughn* (2018) 29 Cal.App.5th 451, 460 ["Had [the contracting parties] . . . intended to narrow the [indemnity] clause to only cover third-party claims, they could have done so expressly."].) However, as indicated in our discussion above, the weight of the authority instead suggests that indemnification provisions are limited to third party claims unless the contractual language contains indicia of an intent to apply more broadly. Indeed, as noted above, the provision in *Wilshire-Doheny* contained such indicia.

Owner—a party to the contract—against Owner's Representative does not fall within the scope of this provision.[8]

B.  *Equitable Indemnity*

Insurer's complaint also sought indemnity pursuant to equitable indemnity principles.  Insurer did not seek summary judgment on this claim, but Contractor did.  The trial court's summary judgment order did not expressly address this aspect of Contractor's motion, instead finding the parties' remaining arguments were resolved by the contractual indemnity ruling.  Contractor's sole argument that it is entitled to judgment on the equitable indemnity claim—both in its summary judgment motion below and on appeal in this court—is that the Construction Contract's indemnity provision precludes Owner's Representative from asserting an equitable indemnity claim.

As Contractor argues, " '[W]hen parties by express contractual provision establish a duty in one party to indemnify another, "the extent of that duty must be determined from the contract and not from the independent doctrine of equitable indemnity." ' " (*Morlin Asset Management LP v. Murachanian* (2016) 2 Cal.App.5th 184, 192.)  But this does not establish that an indemnity provision can preclude a *noncontracting party* from seeking equitable indemnity.  To the contrary, descriptions of the proposition indicate it is based on the would-be indemnitee's knowing negotiation of and entry into the indemnity contract.  "This rule seeks to

---

[8] Because of this conclusion, we need not further consider the parties' arguments as to whether Insurer established a subrogation claim based on contractual indemnity.  (See *Fireman's Fund Ins. Co. v. Maryland Cas. Co.* (1998) 65 Cal.App.4th 1279, 1292 ["An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured."].)

11

'permit[] people to voluntarily order their affairs in a manner agreeable to them' and recognizes that 'equity rarely interferes with a contract knowledgeably executed.' " (*Maryland Casualty, supra,* 35 Cal.App.4th at p. 873; see also *Regional Steel Corp. v. Superior Court* (1994) 25 Cal.App.4th 525, 529 ["By contract, [one contracting party] bargained away its right to pursue [another contracting party] on equitable indemnity grounds."].) Indeed, to hold otherwise would allow contracting parties to unilaterally impair the equitable rights of a noncontracting party, an entirely inequitable outcome. (See *Maryland Casualty,* at p. 864 ["equitable indemnification focuses on principles of fairness and justice"].)

Accordingly, we will reverse the portion of the trial court's summary judgment order granting Contractor's motion with respect to the equitable indemnity claim, and remand for further proceedings on that claim.

II.     *Attorney Fees*

Because we affirm the trial court's ruling for Contractor on Insurer's contract claim, we proceed to consider the court's order denying Contractor's motion for contractual attorney fees.

A.     *Additional Background*

Following the trial court's summary judgment order, Contractor moved for approximately $570,000 in contractual prevailing party attorney fees and costs. Contractor explained how it determined the amount of the requested award as follows: "After separately calculating the total amounts of fees and costs [Contractor] incurred for each three month period of the case, the number of parties, including [Contractor], was counted for each period. The total amount of fees incurred during each quarter was then divided by the number of parties in the case during that period, and the same was done for costs as well. The relevant periods in which [Owner's Representative] and

12

[Insurer] were involved in the litigation were then totaled." No underlying data—for example, the total amount of fees and costs incurred in the litigation, or the number of attorney hours worked in each three month period—was submitted. The litigation included Owner's and Contractor's claims against each other and claims asserted by other cross-defendants against Contractor.

Contractor argued its formula for determining Insurer's liability for fees and costs was "cost-efficient" and "easier on [Insurer]" because it avoided the need to review more than 4,000 pages of attorney invoices and 2,000 pages of cost invoices. Contractor offered to provide these invoices to the court upon request.

The trial court declined to award Contractor fees on two alternative bases. First, the court found Contractor was not entitled to prevailing party attorney fees under the Construction Contract. Second, the court found that Contractor's work litigating the indemnity claims was "limited – the summary adjudication motions but little else," and Contractor's method for determining fees and costs "fail[ed] to establish the . . . reasonable amounts" of the requested award.

B. *Analysis*

We need not decide whether Contractor was entitled to attorney fees under the Construction Contract because we affirm the trial court's order on the second independent ground.

" '[T]he [party] . . . seeking fees and costs " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' [Citation.]" ' [Citation.] ' "To that end, the court may require [a] defendant[] to produce records sufficient to provide ' "a proper basis for determining how much time was spent on particular claims." '

13

[Citation.]" ' [Citation.] 'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' " (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695 (*Nassimi*).)

In *Nassimi,* as here, the appellant incurred fees and costs for which he was only partially entitled to a fee award. (*Nassimi, supra,* 3 Cal.App.5th at pp. 679–680.) The appellant submitted evidence as to the total amount of fees and costs paid in the litigation, but his attorney "made no attempt to allocate attorney fees" between work on the compensable and noncompensable claims, testifying only that " 'probably 50 percent or 75 percent' " of the fees were compensable. (*Id.* at p. 680.) The trial court denied fees, finding the appellant " 'failed to carry his burden of proof to show the amounts he incurred as a result of the . . . litigation are amounts for which [respondent] should be liable,' " and that the appellant's "attempts to allocate the fees was based on 'speculative unsubstantiated assumptions,' and devoid of 'reliable, credible evidence.' " (*Id.* at pp. 682–683.) The Court of Appeal affirmed, finding "the trial court did not err in rejecting the attorney fees claim for lack of evidence." (*Id.* at p. 697.)

Similarly, Contractor made no serious attempt to determine or estimate the fees and costs incurred in defending against the Owner's Representative's and Insurer's indemnity claims. To be sure, as Contractor argues, "California law does not require detailed billing records to support a fee award; '[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.' " (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 263.) But Contractor submitted neither billing records nor attorney testimony as to the number of hours

14

worked *on the relevant indemnity claims.* Contractor made no attempt whatsoever to estimate the fees and costs related to these claims. Contractor's offer to dump thousands of pages of unreviewed billing records on the trial court does not remedy its evidentiary failure.

Contractor cursorily asserts that the fees and costs incurred in defending the indemnity claims were "inextricably intertwined" with its fees and costs in defending Owner's claims. " 'Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' " (*Maxim Crane Works, L.P. v. Tilbury Constructors* (2012) 208 Cal.App.4th 286, 298.) Contractor provides no explanation, much less authority, for how these largely distinct claims were so intertwined.

Contractor argues that, given the length and complexity of the litigation, its calculation method was "[t]he only equitable way, the only efficient way and the only accurate way" to determine reimbursable fees. While certainly efficient, Contractor's method cannot be described as either equitable or accurate. As just one example, after Owner's Representative appeared in the case, Contractor participated in a 98-day trial involving *only* claims between Owner, Contractor, and an architect. Even assuming Contractor incurred some fees and costs related to the indemnity claims during this time, Contractor provides neither authority nor explanation supporting its attempt to make Insurer liable for an equal share of its total fees and costs during the trial solely because of its status as one of the parties in the case.

Finally, Contractor argues that the trial court lacked discretion to deny fees altogether. Contractor's authority is distinguishable. In *Smith v. Krueger* (1983) 150 Cal.App.3d 752, the trial court denied contractual

15

prevailing party fees based on a finding that, after certain conduct by the defendants, the plaintiffs no longer needed to proceed with the lawsuit (which they ultimately won).  (*Id.* at pp. 755–756.)  In *Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, the trial court denied prevailing party fees and costs, finding that the issue underlying the litigation was a question of law; the appellant claimed extensive fact discovery was necessary, during which most of the claimed fees and costs were incurred; and therefore " 'the appropriate allocation' " was for each party to bear its own costs and fees.  (*Id.* at pp. 1239–1240.)  In other words, both cases involved a trial court's finding that a prevailing party was not entitled to recover fees; both such findings were reversed on appeal.  (*Smith,* at p. 757; *Texas Commerce,* at p. 1247.)  The trial court here (in its second independent ground for denying fees) found that Contractor, assuming it was entitled to recover fees, utterly failed to satisfy its burden of demonstrating a reasonable fee award.  The trial court acted well within its discretion.

### DISPOSITION

The judgment is affirmed in part and reversed in part, as follows.  The portion of the trial court's summary judgment/summary adjudication order granting Contractor's motion with respect to Insurer's subrogation claim based on equitable indemnity is reversed; in all other respects, the order is affirmed.  The trial court's order denying Contractor's motion for contractual attorney fees and costs is affirmed.  The parties shall bear their own costs on appeal.

16

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A156755)

17