Filed 3/11/19

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CENTEX HOMES,<br><br>   Cross-complainant and<br>Appellant,<br><br>v.<br><br>R-HELP CONSTRUCTION<br>COMPANY, INC.,<br><br>   Cross-Defendant and<br>Appellant. | 2d Civil No. B276708<br>(Super. Ct. No. 56-2011-<br>00401979-CU-PO-VTA)<br>(Ventura County) |

       A subcontractor is hired by a developer to install utility boxes in a subdivision. The subcontract contains a clause requiring the subcontractor to indemnify the developer for all claims arising out of the subcontractor's work. [[The subcontract also contains a clause requiring the subcontractor to obtain insurance with the developer named as an insured.]]

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

A plaintiff in an underlying tort action brings an action against the subcontractor and the developer for injuries allegedly arising from the subcontractor's work. The subcontractor does not defend the developer.

The trial court submits the question of the subcontractor's duty to defend to a jury. The jury finds the plaintiff's injuries were not caused by the subcontractor's work. Does this end the matter? No.

The end of the trial is not the end of the case. The parties are back to the beginning on the issue of duty to defend. Why? Where plaintiff in an underlying tort action alleges that his injuries arose out of the subcontractor's work, the developer is entitled as a matter of law to a defense under the indemnity clause. It is error to submit the question of the subcontractor's duty to defend to a jury. [[We also hold that the developer is entitled to a jury trial in its action for damages alleging breach of the covenant to provide insurance.]] We reverse and remand.

*FACTS*

Centex Homes (Centex) contracted with R-Help Construction Company, Inc. (R-Help) to trench, install and inspect all utility boxes and conduits for the Novella residential construction project in the City of Thousand Oaks (City). The contract required R-Help to defend and indemnify Centex for all claims "to the extent such Claim(s) in whole or in part arise out of or relate to" R-Help's work. The contract provided for attorney fees incurred in enforcing the indemnity agreement. [[It also required R-Help to maintain a policy of liability insurance to cover such claims, with Centex named as an additional insured.]]

Matthias Wagener filed a civil complaint against Southern California Edison and others alleging he was injured when he fell

2.

into a utility box. The complaint alleged that the defendants negligently managed, maintained, and inspected the utility box cover so as to create an unstable platform. Centex and R-Help were later added as Doe defendants.

In answering R-Help's interrogatories, Wagener stated: "It appears as though R-Help installed and thereafter abandoned the subject junction box or hand hole and adjoining conduit, having installed the lid without the prescribed bolts specifically designed to keep the SCE lid bolted to the junction box. Acting as Centex'[s] agent, R-Help and Centex are both jointly and severally liable to plaintiff for the injuries he suffered and damages he sustained." (Italics omitted.)

Centex tendered the complaint to R-Help for defense and indemnity. R-Help did not respond to the tender.

Centex filed a cross-complaint against R-Help alleging causes of action for breach of contract, indemnity, and declaratory relief. Centex sought costs and expenses incurred in defending Wagener's action and in enforcing the indemnity agreement.

Eventually Centex obtained a dismissal of the Wagener action pursuant to a settlement. Wagener settled his action with the remaining defendants, leaving Centex's cross-complaint against R-Help to be decided.

Centex moved for summary adjudication contending that the allegations of Wagener's complaint alone require R-Help to defend Centex under the indemnity agreement as a matter of law. R-Help moved for summary judgment contending undisputed evidence shows the utility box on which Wagener was injured is outside the scope of R-Help's work under the subcontract. The trial court denied both motions.

[[Centex's cross-complaint against R-Help proceeded to trial on two issues: whether R-Help breached the contract by failing to obtain the required insurance, and whether R-Help has a duty to indemnity Centex for the costs of defending the Wagener action.]]

After pretrial motions in limine, the trial court determined the question of indemnity is for the jury. [[The trial court also determined whether R-Help breached the contract by failing to obtain the required insurance is a question of law for the trial court. The court barred mention of insurance in the jury portion of the trial.]]

*Trial*

A Centex manager and an expert testified for Centex at trial.

Jerry Domke was the senior land development manager for Centex. He has a degree in civil engineering and decades of experience working for public entities, private engineering firms, and real estate developers. He worked for Centex from 2003 to 2007. He was involved in contracting for the Novella project. Domke testified that R-Help contracted to install all the utility boxes for the dry utilities; that is, telephone, electrical, and cable. The box on which Wagener was injured is shown on the City's conduit plan, and is included in the scope of R-Help's work under its subcontract. A change order adjusting the location of the box reflects that R-Help worked on it.

Henry Koffman has a master's degree in civil engineering and is professor of construction engineering and management at the University of Southern California. He testified the utility box on which Wagener was injured was on the plans for the project. It was on the City's conduit plan. The box on which Wagener was

4.

injured was the same model box as another box installed on the project by R-Help. He said no one but R-Help would want to install a box at that location.

Roberto Hurtado, president of R-Help, and the Novella project foreman inspected the subject utility box. They determined the box was not the work of R-Help and was not on the project's plans. They concluded it was not within R-Help's scope of work under the subcontract.

The trial court instructed the jury: "R-HELP CONSTRUCTION CO. had a duty under the contract to defend and pay for the defense of CENTEX HOMES upon a tender of the defense if CENTEX proves that WAGENER's alleged injuries, in whole or in part, arose out of or related to the work performed by R-HELP, unless the information available to both parties at the time of the tender eliminated any reasonable potential that the WAGENER claim arose out of or was related to R-HELP's work. [¶] Whether the WAGENER claim against CENTEX and R-HELP succeeded is not determinative of the duty to defend."

Pursuant to the instruction, the trial court gave the jury a special verdict form that included the following questions: "*Question No. 1*: Did WAGENER allege that his injuries in whole or in part arose out of or were related to R-HELP's work? [¶] . . . [¶] *Question No. 2*: Did the information available to both parties at the time of the tender eliminate any reasonable potential that the allegations in WAGENER's claim arose out of or were related to R-HELP's work?"

The jury answered yes to both questions.

The trial court found that R-Help did not breach the contract by failing to obtain insurance.

The trial court entered judgment in favor of R-Help.

*Post Trial*

Centex moved for a new trial. [[The trial court determined that Centex was entitled to a new trial on R-Help's duty to provide insurance. The court found that the record does not show Centex waived a jury on the issue. The court granted Centex a new trial without prejudice to R-Help's argument that Centex had no right to a jury trial or that the issue has been mooted by the jury's verdict.]] The trial court denied Centex's motion for a new trial on the issue of indemnity. [[Both parties appeal.]]

*DISCUSSION*

*Centex's Appeal*

*I*

Centex contends the trial court improperly delegated the duty to defend issue to the jury. It claims the issue is one of law for the court. We agree.

Centex argues Wagener's allegation that the utility box was within the scope of work R-Help performed for it is alone sufficient to require R-Help to defend. Centex relies on *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541. In *Crawford*, the developer of a residential project subcontracted with a window manufacturer to supply windows for the project. The subcontract required the window manufacturer to indemnity the developer against all claims arising out of the manufacturer's work. Homeowners sued the developer alleging the windows manufactured by the subcontractor were faulty. The developer tendered defense to the manufacturer under the indemnity provisions in the subcontract. Our Supreme Court held that the duty to defend claims embraced by the indemnity agreement arises immediately upon the proper tender of defense, and thus before the litigation has determined whether indemnity is

actually owed. (*Id.* at p. 558.) Claims on which a duty to defend is owed include those which at the time of tender allege facts that would give rise to a duty of indemnity. (*Ibid.*)

Here Wagener claimed his injuries arose out of or related to R-Help's work for Centex. Under *Crawford*, the duty to defend arose immediately upon the proper tender of defense of a claim embraced by the indemnity agreement. (*Crawford v. Weather Shield Mfg., Inc., supra*, 44 Cal.4th at p. 558.) The duty to defend was not a question of fact for the jury; the trial court was compelled to determine as a matter of law that Wagener's claim was embraced by the indemnity agreement.

R-Help attempts to distinguish *Crawford* on the ground that there the question giving rise to indemnity was whether the window manufacturer was negligent. The resolution of that question lies in the underlying tort action. R-Help argues that here the question of the scope of work under the subcontract may be resolved independently of the underlying tort action. But the scope of work was an issue in the underlying tort action here, as was negligence in *Crawford*. Under *Crawford*, the duty to defend arises as a matter of law from the mere allegation in the underlying tort action that plaintiff's injuries arose out of R-Help's work.

*Crawford* suggests that the obligation to defend may not continue "if the promisor . . . conclusively established that the claims were not among those 'embraced by the indemnity.'" (*Crawford v. Weather Shield Mfg., Inc., supra*, 44 Cal.4th at p. 558, fn. 7.) In *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 289, 298, an insurance case on which both parties rely, our Supreme Court stated: "It would be pointless . . . to require an insurer to defend an action where undisputed facts

7.

developed early in the investigation conclusively showed, despite a contrary allegation in the complaint, that the underlying acts occurred on a date when the policy was not in effect or at a location concededly not covered by the policy."

But where the plaintiff's complaint alleges facts embraced by the indemnity agreement, the indemnitor has a duty to defend throughout the underlying tort action unless it can conclusively show by undisputed facts that plaintiff's action is not covered by the agreement.

R-Help attempted to show conclusively by undisputed evidence in its motion for summary judgment that Wagener's action was not covered by the indemnity agreement. R-Help failed to do so.

R-Help's reliance on *Morlin Asset Management LP v. Murachanian* (2016) 2 Cal.App.5th 184 is misplaced. In *Morlin*, plaintiff sued a landlord for injuries that occurred in the common area of an office building. Landlord cross-complained against a tenant under an indemnity agreement in the tenant's lease. The tenant obtained summary judgment on the ground that under the indemnity clause he was only liable to indemnity for injuries that occurred within his suite, not the common area. The Court of Appeal affirmed.

In *Morlin*, unlike this case, the allegations of the complaint in the underlying tort case were not embraced by the terms of the indemnity agreement. Moreover, the tenant in *Morlin* was able to show conclusively by undisputed evidence that the indemnity agreement did not apply. Here R-Help could not so demonstrate. Thus, the trial court denied R-Help's motion for summary judgment.

8.

R-Help argues there is no substantial evidence that installation of the utility box was within its scope of work. R-Help attempts to support its argument by attacking the credibility of Centex's witnesses.

Centex's development manager Domke is a civil engineer with decades of experience. He testified that R-Help contracted to install all the utility boxes for the project. He said the box on which Wagener was injured was within R-Help's scope of work as shown on the City's conduit plan and as reflected in a change order. Centex's expert Koffman also testified that installation of the box was within R-Help's scope of work.

R-Help challenges Domke's and Koffman's testimony by pointing to the cross-examination tending to show that the box in question was not installed according to the City's plans and specifications and had no function as installed. It is not unusual in the history of real estate development that someone who contracted to install an item failed to install it according to the plans and specifications so that it had no function as installed. None of the evidence elicited on cross-examination definitively shows the box was not within R-Help's scope of work or that R-Help did not install the box. Domke's and Koffman's testimony constitutes substantial evidence that could be found credible by a reasonable trier of fact even though that did not happen here.

In any event, it is too late to challenge the duty to defend after the underlying tort case has been resolved. Our Supreme Court stated in *Scottsdale Insurance Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655: "The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. [Citation.] When the duty, having arisen,

is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'"

We recognize that *Scottsdale Insurance Co.* is an insurance case, and that there are some differences in treatment between insurance policies and other indemnity agreements. (See *Crawford v. Weather Shield Mfg., Inc.*, *supra*, 44 Cal.4th at p. 552.) But R-Help cites no authority for a difference in treatment as it relates to the prospective application of the extinguishing of the duty to defend.

It follows that the trial court's jury instruction was erroneous. The court should have instructed that R-Help had a duty to defend and that it breached its duty. The only issue left for the jury would be damages.

[[*R-Help's Appeal*

II

R-Help contends it did not breach the subcontract by failing to obtain the required insurance policy.

But the trial court found after a bench trial that R-Help did not breach its agreement to provide insurance for Centex. R-Help cannot seek review of a favorable ruling. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 327, pp. 375-376.) R-Help can appeal, however, from the trial court's order granting a new trial on the question of insurance. (See *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 285.)

Here Centex brought an action for damages against R-Help, alleging R-Help breached its subcontract by failing to provide the required insurance. An action for damages arising from a breach of contract is an action at law entitling Centex to a jury trial. (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 491-492.)

R-Help argues that the interpretation of a written contract presents a question of law for the trial court.  That is true unless the interpretation turns on the credibility of extrinsic evidence.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)  But R-Help's argument misses the point.  If within the context of a jury trial the trial court determines as a matter of law that R-Help did not breach the insurance provisions of the subcontract, the trial court may grant R-Help judgment of nonsuit or some other appropriate remedy.  But R-Help cites no authority for the proposition that such a possibility deprives Centex of a jury trial in the first instance.  (See *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 863 ["Denial of the right to trial by jury is an act in excess of the court's jurisdiction and is reversible error per se"].)  The trial court points out that "[its] ruling is without prejudice to contentions by R-Help that there was no right to a jury trial on the insurance-procurement issue because it is a matter of contractual interpretation for the court, or that this issue has been mooted by the jury verdict.

*III*

R-Help contends the subcontract is one of adhesion and the provision for attorney fees for enforcement of the indemnity agreement is unconscionable.

A contract of adhesion is a standardized contract, drafted and imposed by the party with superior bargaining power and which offers the subscribing party only the opportunity to accept or reject the contract.  (*Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694.)  A finding that a contract is one of adhesion does not mean it is invalid.  (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 201.)  The finding simply opens a second inquiry:  whether a particular provision

11.

should be denied enforcement because it defeats the expectations of the weaker party or is unduly oppressive or unconscionable. (*Ibid.*)

Here the trial court found that the subcontract was not one of adhesion. R-Help points out in a footnote that its expert testified Centex had the superior bargaining power. But R-Help points to no foundation for that opinion. In any event, the trial court was not required to find the testimony credible. (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028 [trier of fact not required to believe even uncontradicted evidence].) Moreover, unequal bargaining power is not the only element of a contract of adhesion. R-Help points to no credible evidence that it could not have bargained for more favorable terms.

Even if the subcontract were one of adhesion, it would still be enforceable. There is no evidence it defeated the expectations of the weaker party. R-Help's president Hurtado testified he has been in the construction business for 46 years and has been involved with over 1,000 contracts. He read every page of the subcontract and he understood its terms. Nor is there anything about the subcontract's indemnity clause, insurance clause or the attorney fee clause that is unduly oppressive or unconscionable.

R-Help argues the attorney fee clause is unconscionable because it is unilateral. Under "Claim," the subcontract provides for fees incurred "in enforcing this indemnity provision." R-Help relies on *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 88, for the proposition that unilateral attorney fees clauses are unconscionable and are not saved by Civil Code section 1717.

*Carmona* is distinguishable. It involved a contract of adhesion for arbitration of employment disputes between car

12.

wash owners and their employees. *Carmona* did not involve a sophisticated party with 46 years in the contracting business. A provision that may be unconscionable in one context may not be unconscionable in another.

R-Help argues the indemnity provision of the subcontract is unconscionable because Centex interprets it to mean the duty to defend exists even in the absence of a nexus between third party claims and R-Help's work. In fact, *Crawford* shows Centex's interpretation is correct. The duty to defend is broader than the duty to indemnify. (See *Crawford v. Weather Shield Mfg., Inc.*, *supra*, 44 Cal.4th at p. 558 [duty to defend does not depend on whether the litigation to be defended establishes a duty of indemnity].)

Finally, R-Help claims the attorney fee provision is unconscionable because it places it in a worse position than an insurer. R-Help claims an insurer is not always liable for attorney fees incurred in enforcing the duty to defend. (Citing *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 820 [insurer liable for attorney fees in enforcing duty to defend where it has denied defense in bad faith].)

But insurance policies typically do not contain attorney fee clauses. Attorney fee clauses are common in other types of contracts. There is no reason why they should not apply to the enforcement of indemnity agreements as well as other contractual provisions. That insurers and others whose contracts do not contain attorney fee clauses may not be similarly burdened does not mean such clauses are unconscionable.]]

We reverse the judgment and remand. Centex is entitled to a new trial on the issue of damages for failure to defend.

[[Centex is also entitled to a new trial on the issue of whether R-Help failed to obtain insurance.]]  Costs are awarded to Centex.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____

Musick, Peeler & Garrett, LLP, Adam L. Johnson, Cheryl A. Orr for Cross-complainant and Appellant.

Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, LLP, Mark G. Bonino, Charles Tillage; Law Offices of Jamie Skeeba, Mark Santa Romana for Cross-defendant and Appellant.