Filed 12/20/23  Garcia v. Bank of Stockton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN GARCIA et al., | F084375 |
| Plaintiffs and Appellants, | (Super. Ct. No. 18CECG00977) |
| v. | |
| BANK OF STOCKTON, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from orders of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Gilmore Magness Janisse and David M. Gilmore for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Sean M. Higgins and Greg L. Johnson for Defendant and Respondent.

-ooOoo-

## INTRODUCTION

Appellants John Garcia, Janie Garcia, and Vista Del Sol, LLC assert three claims of error in this appeal.  Appellants first argue the trial court erred when it granted respondent Bank of Stockton's summary adjudication motion and concluded respondent's duty to indemnify and defend appellants ended on a date certain, January 4, 2017.  Second, appellants contend the court erred when it concluded it had insufficient evidence from which to award damages.  Third, appellants claim the court erred in denying their motion for a new trial under Code of Civil Procedure section 657[1] or to modify the judgment under section 662 so that they could retry their damages case.

For the following reasons, we affirm the judgment.

## BACKGROUND

This case centers on an indemnification and defense agreement pursuant to which respondent agreed to indemnify and defend appellants from certain third-party claims.

The parties largely agree on the factual background of this dispute.  Appellants John Garcia and Janie Garcia were 50 percent owners of two limited liability companies, Vista Del Sol Farms, LLC and Vista Del Sol Farms I, LLC (collectively referred to as "Vista Del Sol").  Morris Garcia and Sharon Garcia were the other 50 percent owners of Vista Del Sol.

Morris[2] and Sharon became indebted to respondent and defaulted on that debt.  Respondent obtained a judgment against Morris and Sharon on April 14, 2010, for slightly less than $2.2 million.  However, on April 12, 2010, two days prior to this judgment, Morris and Sharon had stipulated with Douglas Maddox to the entry of a judgment and charging order against their interests in Vista Del Sol in satisfaction of yet

---

[1]   Undesignated statutory references are to the Code of Civil Procedure.

[2]   Because the individuals involved in this case share the same last name, we will refer to them by their first names for the sake of convenience only.  No disrespect is intended.

2.

another debt.  Respondent ultimately obtained its own charging order against Morris and Sharon's interests in Vista Del Sol in July 2010.  Respondent foreclosed on Morris and Sharon's economic interests in Vista Del Sol in August 2012, while John and Janie continued to own the remaining half of the economic interests.

In April 2012, respondent sued appellants, Morris, Sharon, and the executrix of the estate of Douglas Maddox (collectively referred to with Douglas Maddox simply as "Maddox") in *Bank of Stockton v. Garcia* (Super. Ct. Fresno County, 2021, No. 12CECG03902) (the "3902 Action").  In May 2013, Maddox filed a cross-complaint against respondent and others in the same action challenging respondent's foreclosure and seeking damages in relation to the transfer of Morris and Sharon's ownership interests in Vista Del Sol to respondent.

While the 3902 Action was pending, in November 2013, Vista Del Sol sold the primary real estate asset associated with its business—almond orchards—and planned to dissolve the business entities.  Pursuant to settlement and dissolution agreements entered in June 2014, Vista Del Sol distributed $5 million equally to John and Janie on the one hand, and respondent on the other.

Critically to this case, the settlement agreement contained an indemnification provision, which states:  "[Respondent] shall indemnify, defend and hold harmless [appellants] for any claims for damages made or asserted by Morris [and Sharon] or … Maddox based on distributions made to [respondent] pursuant to this Agreement prior to a resolution of [respondent's] claims regarding the validity of the Maddox Charging Order; provided, however, that [respondent's] agreement to indemnify, defend or hold harmless [appellants] shall expire upon the earlier of (a) the expiration of any opportunity to seek appellate review of any judgment, order, or decree issued in the [3902] Action adjudging the [respondent's] economic interest in [Vista Del Sol] to be free and clear of the Maddox Charging Order; or, (b) [respondent's] satisfaction or settlement of the amounts secured by the Maddox Charging Order, if any."  Additionally, an addendum to

the dissolution agreement contained an indemnification clause requiring appellants to indemnify and defend respondent from claims "arising from or connected to or related to [John and Janie's] ownership, management and operation of Vista Del Sol."

The indemnification provision requiring respondent to defend appellants proved to be an issue of some dispute between the parties, as what followed next were a series of lawsuits instituted by Morris and Sharon against appellants. In May 2015, Morris, Sharon, and their son, Kevin Garcia, instituted a suit against John and Janie, naming Vista Del Sol as nominal defendants in *Garcia v. Garcia* (Super. Ct. Fresno County, 2015, No. 15CECG01410) (the "1410 Action"). Morris and Sharon alleged, among other things, that John and Janie had violated their fiduciary duties in the management of Vista Del Sol. Appellants tendered the complaint to respondent for indemnification and defense in May 2015. Respondent largely rejected the tender, claiming it fell outside of the indemnification provision, but offered to pay 10 percent of the defense costs up to a total of $20,000. Appellants rejected this offer.

In August 2015, Maddox filed an amended cross-complaint in the 3902 Action, adding claims against appellants for conversion, concealment, violations of the Corporations Code, and purportedly fraudulent transfer, for paying proceeds from the real estate sale to respondent. Appellants tendered this cross-complaint to respondent for indemnification and defense on August 28, 2015. Respondent agreed to accept the defense and indemnity of the cross-complaint on August 31, 2015, and advised it intended to have its attorney litigate the defense of the case. Respondent indicated that it would not pay for fees generated by appellants' separate counsel after the date it agreed to accept the defense and indemnity of the cross-complaint. Appellants responded on September 8, 2015, advising they would accept the defense and indemnity so long as there was no reservation and all fees were paid. Accordingly, it appears appellants directed their counsel to continue defending the suit and not tender the defense to respondent.

On September 3, 2015, Morris and Sharon filed an elder abuse suit against John and Janie in *Garcia v. Garcia* (Super. Ct. Fresno County, 2019, No. 15CECG02784) (the "2784 Action"), alleging appellants failed to make payments on their behalf and deprived Morris and Sharon of their economic interests in Vista Del Sol, among other allegations. It is unclear whether this suit was ever tendered to respondent for indemnification and defense. Appellants state it was tendered on September 8, 2015, but fail to include a citation to the record showing this. They also state respondent rejected the tender; however, the citation provided is to a letter in the record which concerns the 3902 and 1410 Actions, not the 2784 Action.

On November 30, 2016, respondent secured a judgment against Maddox in the 3902 Action, which confirmed that Maddox's judgment and charging order against Morris and Sharon's interests in Vista Del Sol was void for lack of jurisdiction. On January 6, 2017, Maddox and respondent executed a stipulation to waive any award of costs to respondent and Maddox's right to appeal, thereby ending the dispute with Maddox.

The final suit was filed on November 22, 2017, when Morris and Sharon sued Vista Del Sol and others to set aside John and Janie's sale of Vista Del Sol real estate in *Garcia v. Samara Ranches, LLC* (Super. Ct. Madera County, 2019, No. MCV076400) (the "0764 Action"). Appellants tendered the defense of that claim to respondent on December 18, 2017; respondent declined to provide indemnification or defense.

This action was instituted by the filing of a complaint by appellants on March 21, 2018, which alleged two causes of action for breach of contract and declaratory relief. On August 7, 2018, respondent filed a cross-complaint for declaratory relief. The parties stipulated to submitting cross-motions for summary judgment and/or adjudication. The trial court denied appellants' motion for summary judgment, concluding triable issues of fact remained on appellants' claims. The court, however, granted respondent's motion for summary adjudication, finding that any obligation respondent had to defend and

5.

indemnify appellants expired on January 4, 2017, when the judgment entered against Maddox became final.

Following the trial court's ruling on those summary judgment and adjudication motions, the parties stipulated to vacate the trial date and submit the matter to the court for a bench trial based solely on written submissions. The court entered judgment in favor of respondent on November 17, 2021. After the entry of judgment, appellants moved for a new trial or to modify the judgment on March 17, 2022. The motion was denied on April 21, 2022. A notice of appeal was timely filed on May 18, 2022.

## ANALYSIS

### I. Standard of Review

We review the trial court's decision on the summary judgment motions de novo. (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642; *Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 973.) "A trial court's order granting a motion for summary adjudication is reviewed de novo." (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471.) The same standards that apply to a motion for summary judgment apply to a motion for summary adjudication, the difference being that a summary adjudication motion only seeks summary resolution of a portion of a lawsuit, rather than the entirety of the complaint. (See § 437c, subd. (f)(1) ["[a] party may move for summary adjudication as to one or more causes of action within an action … if the party contends that the cause of action has no merit"], (2) [noting motions for summary adjudication "proceed in all procedural respects as a motion for summary judgment"]; *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

Concerning the decision following the court trial on written submissions, we start from the perspective that a "judgment or order of the lower court is *presumed* correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court*

6.

(1970) 2 Cal.3d 557, 564; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) " '[I]n reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment." (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765, first bracketed insertion added.) However, questions of law determined in the statement of decision are still reviewed de novo. (*Ibid.*)[3]

---

[3]     Appellants assert this court should review all aspects of the bench trial de novo, because "it is based on the interpretation and application of the terms of a contract that are not in dispute." The trial court's ruling after the bench trial includes both findings of law and findings of fact. The ruling resolved both declaratory judgment causes of action and appellants' causes of action for breach of contract. In doing so, the court first made rulings about what duties were owed under the contract. This type of contractual interpretation is a quintessential question of law, not one of fact, and de novo review applies. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 ["Duty is a question of law for the court, to be reviewed de novo on appeal."]; *Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 536.)

However, both breach and the appropriate measure of damages are generally questions of fact, unless reasonable minds could not differ based on the evidence presented. (See *Moresco v. Foppiano* (1936) 7 Cal.2d 242, 245; *Ash v. North American Title Co.* (2014) 223 Cal.App.4th 1258, 1268; *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277; *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1393; *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 874; *Sannes v. McEwan* (1932) 122 Cal.App. 265, 270.) In denying summary judgment on appellants' breach of contract claims, the trial court specifically found there were genuine disputes of material fact necessitating resolution at trial related to both breach and damages. We conclude both breach and damages here are questions of fact appropriately reviewed for substantial evidence. (See, e.g., *People v. Waidla* (2000) 22 Cal.4th 690, 730; *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429; *Ash v. North American Title Co.*, *supra*, at p. 1268; *Brown v. Grimes*, *supra*, at p. 279; *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1055; *Sannes v. McEwan*, *supra*, at p. 270.) "Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard v. Owens*

Lastly, concerning the motion for a new trial under section 657 or to modify judgment under section 662, these motions are typically reviewed for abuse of discretion. (See *Guzman v. NBA Automotive, Inc.* (2021) 68 Cal.App.5th 1109, 1115.) However, "any determination underlying any order is scrutinized under the test appropriate to such determination." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859.) In other words, if the motion for a new trial is premised on a legal determination in a summary judgment/adjudication motion, it is reviewed by the Court of Appeal de novo and is not given deference. (*Doe v. SoftwareONE Inc.* (2022) 85 Cal.App.5th 98, 102.) If the issue raised in the motion for a new trial or to modify the judgment is premised on a factual, equitable, or qualitative decision, this is typically reviewed for abuse of discretion. (*Id.* at pp. 102–104; see also *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1122–1124 (conc. opn. of Turner, P. J.); *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1561, fn. 18.)

II.     **The Trial Court's Contractual Analysis in Resolving the Summary Adjudication Motion is Correct**

Appellants first argue the trial court erred in finding that the duty to defend ended on January 4, 2017.[4] They claim that, once the duty to defend arose, it could not end until the underlying case was completely resolved. This argument is largely based on case citations taken from the area of insurance law, which is a highly regulated and specialized form of contract law. For the reasons that follow, we do not find this argument convincing.

---

*Corning* (1999) 72 Cal.App.4th 621, 630–631.) "[E]ven if the judgment of the trial court is against the weight of the evidence, we are bound to uphold it so long as the record is free from prejudicial error and the judgment is supported by evidence which is 'substantial,' that is, of ' "ponderable legal significance," ' ' "reasonable in nature, credible, and of solid value .…" ' " (*Id.* at p. 631.)

[4]     Because none of the cases for which a claim was tendered pursuant to the settlement agreement ended with a judgment against appellants, the indemnification component was never implicated.

Both settlement agreements and indemnity agreements are contracts like any other and are usually governed by the general rules applicable to contract interpretation. (*Coral Farms, L.P. v. Mahony* (2021) 63 Cal.App.5th 719, 726 ["Generally, the interpretation of a settlement agreement is governed by the same rules that apply to other contracts."]; *United States Elevator Corp. v. Pacific Investment Co.* (1994) 30 Cal.App.4th 122, 125 ["An indemnity provision of a contract is to be construed under the same rules governing contracts in general, with a view to determining the intent of the parties."].) The court's goal is to "give effect to the mutual intention of the parties as it existed at the time of contracting." (Civ. Code, § 1636.) Where a contract term is unambiguous, the written language of the contract controls, and extrinsic parol evidence is inadmissible to contradict it. (Code Civ. Proc., § 1856, subd. (a); *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 389 [acknowledging that "a clear and unambiguous at-will provision in a written employment contract, signed by the employee, cannot be overcome by evidence of a prior or contemporaneous implied-in-fact contract requiring good cause for termination"]; *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808; *Griswold v. Frame* (1920) 48 Cal.App.178, 181–182.) A contractual term is ambiguous if it is "reasonably susceptible" to more than one interpretation. (*Horath v. Hess* (2014) 225 Cal.App.4th 456, 464.)

By statute, additional rules of interpretation are imposed on indemnity contracts. "In the interpretation of a contract of indemnity, the following rules are to be applied, *unless a contrary intention appears*: [¶] … [¶] 3. An indemnity against claims, … expressly, or in other equivalent terms, embraces the costs of defense against such claims … incurred in good faith, and in the exercise of a reasonable discretion; [¶] 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity .…" (Civ. Code, § 2778, subds. (3), (4), italics added.) "A contractual promise to 'defend' another against specified claims clearly connotes an obligation of

9.

active responsibility, from the outset, for the promisee's defense against such claims."
(*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 553–554 (*Crawford*).)
"The duty promised is to render, or fund, the *service* of providing a defense on the
promisee's behalf—a duty that necessarily arises as soon as such claims are made against
the promisee, and *may* continue until they have been resolved." (*Id.* at p. 554, second
italics added.) Due to the statute, "the case law has long confirmed that, *unless the
parties' agreement expressly provides otherwise*, a contractual indemnitor has the
obligation, upon proper tender by the indemnitee, to accept and assume the indemnitee's
active defense against claims encompassed by the indemnity provision." (*Id.* at p. 555,
italics added.)

The general assumption of an indemnification provision via which the indemnitor
has agreed to cover the defense of a claim or case is that the defense will be provided
until the matter's conclusion. (See *Scottsdale Ins. Co. v. MV Transportation* (2005)
36 Cal.4th 643, 655; *Centex Homes v. R-Help Construction Co, Inc.* (2019)
32 Cal.App.5th 1230, 1238.) However, "subject to public policy and established rules of
contract interpretation, the parties have great freedom to allocate [indemnification]
responsibilities as they see fit." (*Crawford*, *supra*, 44 Cal.4th at p. 551.)

This is particularly true *outside* of insurance contracts. Our Supreme Court has
noted that, while "indemnity agreements resemble liability insurance policies, rules for
interpreting the two classes of contracts do differ significantly." (*Crawford*, *supra*,
44 Cal.4th at p. 552.)[5] "Ambiguities in a policy of insurance are construed against the
insurer, who generally drafted the policy, and who has received premiums to provide the

---

[5] Appellants' assertion that our "Supreme Court in *Crawford* found no convincing authority for a different treatment between insurance policies or indemnity agreements" is somewhat baffling. Even on the page cited in appellants' brief, the Supreme Court said exactly the opposite. While, to our knowledge, the Supreme Court has never said insurance law is completely inapplicable to other indemnity contracts, it did caution in *Crawford* that the public policies underlying the two are often different and may impact interpretation. (*Crawford*, *supra*, 44 Cal.4th at p. 552.)

agreed protection. [Citations.] In noninsurance contexts, however, it is the *indemnitee* who may often have the superior bargaining power, and who may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault." (*Crawford*, at p. 552.) Because of these public policy concerns, the trend in insurance cases favoring a harsher interpretation against the indemnitor—i.e., the insurance company—is not present in, and is in fact sometimes reversed in, noninsurance indemnity agreements. (*Ibid*.)

For instance, it is generally true the duty to defend imposed in an insurance agreement is not limited to the policy period; only the event triggering potential coverage must occur during the policy period, and then the defense duty extends until completion of the suit. (See *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 75 ["although the *trigger* of the duty to defend is limited to the policy period, the *extent* of the duty to defend is not"].) But appellant points us to no case outside of the insurance context suggesting that contracting parties cannot limit the length of indemnification and defense agreements by doing so expressly. This, coupled with the language of the contract, controls the outcome on this question.

In this case, respondent agreed to "indemnify, defend and hold harmless" appellants "for any claims for damages made or asserted" by three specified parties— "Morris," "Sharon," or "Maddox"—so long as they were related to one particular issue. Specifically, those claims needed to be "based on distributions made to [respondent] pursuant to this Agreement" and made "prior to a resolution of [respondent's] claims regarding the validity of the Maddox Charging Order." However, the agreement then went on to say that respondent's "agreement to indemnify, defend or hold harmless [appellants] shall expire upon the earlier of (a) the expiration of any opportunity to seek appellate review of any judgment, order, or decree issued in the [3902] Action adjudging the [respondent's] economic interest in [Vista Del Sol] to be free and clear of the Maddox Charging Order; or, (b) [respondent's] satisfaction or settlement of the amounts secured

11.

by the Maddox Charging Order, if any." In other words, respondent agreed to indemnification and defense, but did so only in relation to claims by certain parties, related to a certain topic, and made during a certain period. *Further*, the parties specifically provided those duties would expire when the judgment in the 3902 Action was final, which occurred on January 4, 2017.

To "expire" means "to come to an end." (Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/expire> [as of Dec. 20, 2023].) Appellants suggest no alternative meaning of the term "expire" which would indicate something *other* than all defense and indemnification duties coming to an end when the judgment in the 3902 Action was final, which occurred on January 4, 2017. Absent such an explanation, this expiration provision is unambiguous: Any duties owed under the indemnification and defense clause came to an end when the 3902 Action became final. While the normal presumption, absent such a clause, might have been that such duties would continue until the conclusion of litigation, both statute and case law indicate the parties to indemnification agreements may choose to vary their agreement. (See Civ. Code, § 2778 ["the following rules are to be applied, *unless a contrary intention appears*" (italics added)]; *Crawford*, *supra*, 44 Cal.4th at p. 555 ["unless *the parties' agreement expressly provides otherwise*, a contractual indemnitor has the obligation, upon proper tender by the indemnitee, to accept and assume the indemnitee's active defense against claims encompassed by the indemnity provision" (italics added)].) Here, the parties chose to include an expiration term to respondent's obligation to indemnify or defend. This court is not empowered to change the language of the parties' agreement, particularly where the parties are both sophisticated businesses represented by competent counsel.

The fact that the indemnification clause, and its expiration term, is unambiguous also controls appellants' argument that the trial court erred by concluding that the time limitation also applied to claims from Morris and Sharon. Appellants argue that there

12.

"was no agreement to any limitation on the time frame relating to the duty to defend and indemnify claims that might be brought by Morris and Sharon." But this is precisely what the expiration clause states. According to the parties' written contract, respondent's "*agreement* to indemnify, defend or hold harmless [appellants] shall expire upon" a favorable final judgment in the 3902 Action. The language clearly says the "agreement" would expire, thus indicating it applies to the totality of the indemnification and defense agreement, not a component part. The expiration clause does not say indemnification and defense would continue to apply as to Morris and Sharon, but not as to Maddox. While such language could have been negotiated for and included, it was not. Again, we cannot rewrite the contract for appellants' benefit.

We do not find persuasive appellants' argument that the fact expiration could be triggered by either of two alternatives made the contract illusory. Appellants argue that, because the expiration was triggered by the earlier of final judgment *or* settlement, the promise was illusory, since respondent could trigger expiration at any time merely by settling the claims. "A contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 385.) However, what it is critical to creating an illusory contract is the right to modify or terminate being truly unfettered. Courts have routinely held that even contracts which contain a unilateral provision allowing modification or termination are not illusory, because they remain subject to the overarching implied covenant of good faith and fair dealing. (See *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15–16; *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 706.)

Respondent did not have unfettered discretion here. The alternative expiration clause was triggered by settlement of the claims by Maddox seeking to invalidate respondent's interest in Vista Del Sol. Settling a lawsuit is not an activity in which any

13.

one party has unfettered discretion. It necessarily requires the agreement of the other parties bringing claims in that lawsuit. Put simply, there is no way respondent could have *forced* a settlement with Maddox at any moment, and thus caused the expiration clause to trigger on demand. Without truly unfettered discretion, the contract is not illusory. (*Asmus v. Pacific Bell*, *supra*, 23 Cal.4th at pp. 15–16 ["It has been thought, also, that promissory words are illusory if they are conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion. This is not true, however, if the words used do not leave an unlimited option to the one using them. It is true only if the words used do not in fact purport to limit future action in any way."].)

In sum, we find that the indemnification provision contained a clear and unambiguous expiration clause, which triggered when a final favorable judgment was entered in the 3902 Action. The expiration clause applied to the entire indemnification agreement, not merely claims brought by Maddox, and therefore also cut off any obligation to indemnify or defend against claims brought by Morris and Sharon as of January 4, 2017. Accordingly, there is no basis to overturn the trial court's decision on the summary adjudication motion.

### III.     The Trial Court's Decision to Award No Damages is Affirmed

Appellants next contest the trial court's decision on the merits of their claim. The court found respondent owed a duty to indemnify and defend in the 3902 Action and a duty to partially defend and indemnify in the 1410 Action. It found respondent had no duty to indemnify or defend in the 2784 Action. It then concluded appellants had failed to present evidence from which it could come to a reasonable approximation of the damages to be awarded, because all of the attorney fees which were claimed as damages were commingled and in no way separated by different cases. According to appellants, the court erred in concluding there was no duty to indemnify or defend in the 2784 Action. Also, appellants argue the court's conclusion that respondent owed defense

14.

and indemnification to at least some of appellants' tenders of the claims against them means they should have been awarded at least *some* damages. Appellants reiterate this argument by contending it was an abuse of discretion for the trial court not to grant their motion for a new trial or to modify the judgment. We find no error and affirm.

> A. *Waiver.*

Respondent claims appellants waived these arguments on appeal by failing to cite to necessary portions of the record and failing to support their argument with legal authority. It is true appellants cite neither the record nor legal authority with any specificity in this section of their brief.[6] It is also true we have held, on many occasions, the failure to cite to the record or legal authority may be deemed a waiver of an argument. (See, e.g., *Antelope Valley Groundwater Cases* (2021) 63 Cal.App.5th 17, 50, fn. 9; *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1253; *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 740–741.) However, this is a discretionary rule, not a mandatory one. (See, e.g., *Escobar v. Flores* (2010) 183 Cal.App.4th 737, 747, fn. 5; *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1025, disapproved on other grounds in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 634, fn. 7.) The failure to adequately cite may hurt appellants' arguments to the extent they fail to direct us to specific portions of the record that support their arguments. (See, e.g., *Garcia v. Seacon Logix, Inc.* (2015)

---

**6**     There is one record citation in this section which cites generally to approximately 140 pages of the record to establish the trial court had uncontradicted evidence of the amount of fees incurred by appellants. First, this citation does not establish that this evidence is uncontradicted. A further review of the record shows respondent disputed both whether it breached the agreement *and* the amount of damages for any such breach, as shown in respondent's objections to appellants' statement of undisputed material facts and its trial brief. Second, a general citation to large blocks of pages does little to point us to any specific information to support this point. (See, e.g., *Ruiz Nunez v. FCA US LLC* (2021) 61 Cal.App.4th 385, 392 [noting with disapproval citations to "large swathes of the reporter's transcript rather than to specific pages"]; *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 611 ["block citations do not comply with California Rules of Court, rule 8.204(a)(1)(C) and frustrate the court's ability to evaluate the party's position"].)

238 Cal.App.4th 1476, 1489 [" 'It is not the function of this court to comb the record looking for the evidence or absence of evidence to support [a party's] argument.' "]; *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 534.)  But we decline to wholly reject consideration of appellants' merits arguments on this basis.

Additionally, we requested supplemental briefing on the issue of nominal damages.  In response, respondent argued nominal damages were waived by appellants' failure to request them in the trial court.  We doubt whether this is possible simply as a matter of logic.  As explained further below, once the elements of a breach of contract cause of action have been established, the award of some damages necessarily follows, even if no actual damages have been proven.  (*Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632 (*Sweet*) [finding nominal damages are "presumed as a matter of law to stem merely from the breach of a contract"].)  If nominal damages are an inherent part of breach of contract—since the plaintiff must prove at least the existence of damages as part of proving their claim—it is not apparent how a plaintiff *could* waive them without dismissing the cause in its entirety.  In any event, we do not find waiver here; we raised the issue, and it was therefore appropriate for the parties to discuss it.  (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party." "Whether or not it should do so is entrusted to its discretion."]; Gov. Code, § 68081 ["Before … a court of appeal … renders a decision … based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing."].)

> B.  *Applying de novo review to the legal question of duty, the ruling is affirmed.*

Appellants briefly assert the trial court "erred in its ruling that only two of the cases were encompassed in the defense/indemnity obligations."  The court found

respondent "had <u>no duty</u> to indemnify and defend" appellants in the 2784 Action. This is a legal question of contract interpretation reviewed de novo.

As discussed above, the 2784 Action was brought by Morris and Sharon alleging financial elder abuse against appellants. The complaint in the 2784 Action alleged appellants intentionally failed to make payments on the charging order owed to respondent to deprive Morris and Sharon of their economic interests in Vista Del Sol. This caused respondent to foreclose on Morris and Sharon's economic interests in the company. Morris and Sharon alleged that, even if they no longer held economic interests, they still held membership interests in Vista Del Sol, and were unlawfully prevented from participating in the business operations and having access to the records of Vista Del Sol. They also alleged they were not paid a salary or paid a portion of the sale proceeds from Vista Del Sol's sale of property. Lastly, they claimed appellants filed false statements with the Secretary of State. All of these things allegedly constituted financial elder abuse within the meaning of Welfare and Institutions Code section 15610.30.

The contract at issue here provided for indemnification and defense of any claims for damages made by Morris and Sharon "based on distributions made to [respondent] pursuant to this Agreement." In other words, indemnification and defense was to be provided against any claims filed by Morris and Sharon predicated on the distribution of assets from Vista Del Sol to respondent.

Morris and Sharon's complaints in the 2784 Action largely relate to what happened *before* the foreclosure sale, insofar as they allege appellants failed to pay on the charging order, which ultimately resulted in the foreclosure. Morris and Sharon also complained they were not permitted to participate in the running of Vista Del Sol and were not given access to its records. None of these are complaints based on the distribution of assets to respondent. Even Morris and Sharon's allegations that come closest—that they were not paid a salary or a portion of the sale proceeds—fall short of

17.

the indemnification agreement. Morris and Sharon's complaint was that *they were not paid* proceeds from the sale, not that respondent *was paid*. In other words, nothing about Morris and Sharon's complaint suggests they had any qualms about respondent receiving a distribution of the assets; they merely objected that they *also* did not get a payout. Under the plain language of the agreement, these financial elder abuse claims are not "based on distributions made to [respondent] pursuant to this Agreement." The 2784 Action was not covered by the indemnification agreement.

### C.  *Applying the substantial evidence standard to the factual question of damage, the finding is affirmed.*

Appellants also argue the court "had undisputed and uncontradicted evidence of the amount of fees incurred by [appellants] from the date of the agreement through January 4, 2017." Appellants argue their time records were in evidence, and the trial court erred by failing to award damages. Since appellants challenge the resolution of a question of fact—i.e., the amount of damages—we review the trial court's finding for substantial evidence.

Damages are a necessary element of any breach of contract action. (*Monster, LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1227, fn. 4; *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1468.) It is axiomatic a plaintiff may not recover damages that are not causally related to the breach of contract established. (Civ. Code, § 3300; *Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 511; *Automatic Poultry Feeder Co. v. Wedel* (1963) 213 Cal.App.2d 509, 515–516.) "The amount of damage sustained by a party need not be proved with the same degree of certainty as the fact of damage, but may be left to reasonable approximation or inference." (*Johnson v. Cayman Development Co.* (1980) 108 Cal.App.3d 977, 983; see also *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 398.) However, admissible evidence must exist to provide such a reasonable approximation of damages; such damages evidence cannot be speculative.

(See *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989; *Carey v. Glenco Citrus Products* (1965) 235 Cal.App.2d 572, 581–582.)  That said, where a breach of a duty has occurred, a plaintiff is typically entitled to at least nominal damages.  (See Civ. Code, § 3360; *Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 966–968 [finding the failure to award nominal damages warranted reversal when it could impact the parties' rights in other regards]; *Sweet*, *supra*, 169 Cal.App.2d at p. 632.)

The trial court first flagged appellants' problems with its presentation of damages in deciding the parties' summary judgment and summary adjudication motions.  In ruling on appellants' summary judgment motion, the trial court noted it appeared claims related to some cases, such as the 1410 Action, were likely not covered by the indemnification and defense clause, while claims related to other cases, such as the 3902 Action, likely were covered.  Part of denying appellants' summary judgment motion was that even if appellants had proved a breach, "[appellants] have failed to provide evidence showing how they calculated the damages they incurred as to each of their claims.  They only state that they incurred $172,579.23 for the period between the settlement agreement and the resolution of the dispute with Maddox, without explaining which defense costs were incurred for defending each separate case."  Accordingly, per the court, "[s]ince it does not appear that [appellants] are entitled to damages as to each separate claim that they tendered to [respondent], they would need to provide evidence regarding the defense costs incurred as to each claim in order for the court to be able to determine the amount of damages they are entitled to recover."

Even after the parties agreed to move forward only on written submissions to the court, appellants did not revise or supplement their damages case, despite this warning.  Perhaps unsurprisingly, following the bench trial, the court determined it had no way to calculate damages, because there was no way to reasonably approximate the time spent on the actions that were covered either in whole or in part.  The sole evidence of damages was a declaration from appellants' attorney stating he had represented appellants in the

19.

various disputes since July 2012. The attorney attached to his declaration a "complete breakdown of the time entries and descriptions as well as the out of pocket costs incurred."

The declaration purported to explain the breakdown of the fees but did not actually make matters any clearer. The declaration stated, "Items under sub-file 1 are not related to the litigation and are not included in the total amount sought. Sub file -0 is the main file in which time was kept in this period. Sub file -2 was set up to keep track of the work done when Morris and Sharon first filed their suit on May 5, 2015 and all work under that file related to that claim.[7] Sub file -3 was set up in September of 2015 after the elder abuse suit was filed.[8] In the end though the cases overlapped and were intertwined and over time, I switched the billings to the sub file -0." In other words, subfile -1 represented fees that could not be part of any damages award, subfile -2 represented fees of which a portion might be part of a damages award, and subfile -3 represented fees related to the 2784 Action, which were not a part of any damages award. However, all were ultimately switched into sub file -0.

Subfile -0 presents a considerable problem here. The only description for subfile -0 provided by appellants' attorney is that it was the "main file in which time was kept in this period." No explanation was included which would permit the trial court to determine whether subfile -0 included work related to the 3902 Action (which was covered), the 1410 Action (which was partially covered), or the 2784 Action (which was not covered).[9] This is particularly true given the attorney's statement that "[i]n the end

---

[7] Although the declaration does not indicate the case number or court to which this refers, it appears to be a reference to the 1410 Action, for which the court determined respondent had a partial duty to defend appellants.

[8] This appears to refer to the 2784 Action.

[9] Since this declaration purported to include billing records between May 2015 and January 2017, we presume it did not include any time related to the 0764 Action, which was not filed until November 2017.

though the cases overlapped and were intertwined and over time, I switched the billings to the sub file -0." In other words, there simply is no telling whether the work in subfile -0 is related to a covered matter or a noncovered matter.

A review of the actual billing records does not help appellants. The time entries in subfile -0 are almost invariably vague enough that they could apply to any case. For one example, time was billed on May 20, 2015, for "Review and analysis of discovery requests." No case number is attached to this, or to virtually any other time entries in the 140-page file. On this record, we find there was substantial evidence for the trial court to conclude the evidence of damages was speculative.

However, notwithstanding actual damages, it appears the trial court did err in its damages analysis. Assuming the trial court found a breach of contract,[10] it should have awarded at least nominal damages, even if it concluded the evidence on actual damages was speculative. "A plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him [citation], since the defendant's failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages." (*Sweet*, *supra*, 169 Cal.App.2d at p. 632.) Nominal damages are "presumed as a matter of law to stem merely from the breach of a contract." (*Ibid.*)

As this court has previously explained, if "the judge determined defendant's conduct caused plaintiffs some damages," and "if the trial judge merely believed the evidence was speculative in the sense that he could not calculate the damages with

---

**10** The trial court did not make a clear finding on whether a breach of contract occurred. It noted respondent had a duty to indemnify as to certain cases, and none as to other cases. It also noted appellants had tendered and respondent had responded in varying ways but did not say whether these obligations were sufficient to discharge respondent's duty under the contract. For purposes of this part of our analysis, we assume the trial court found breach where it found duty. Because we find the failure to award nominal damages here is not a basis for remand, it is ultimately inconsequential. We analyze appellants' brief argument that the court erred by not making a finding on breach below.

21.

certainty, he should have nevertheless resorted to the best evidence available and fixed damages accordingly [citation]." (*Hutcherson v. Alexander* (1968) 264 Cal.App.2d 126, 135.) "On the other hand, if the trial judge believed the evidence was completely speculative so that the amount of damages fixed would be entirely conjectural, he should have at least allowed plaintiffs nominal damages [citation]." (*Ibid.*)

While it is error not to award at least nominal damages, assuming breach, it is not reversible error. Nominal damages are not a basis to reverse a lower court's decision unless the award of nominal damages impacts other rights of the parties. (*Elation Systems, Inc. v. Fenn Bridge LLC*, *supra*, 71 Cal.App.5th at p. 967 [right to equitable relief]; *Sweet*, *supra*, 169 Cal.App.2d at pp. 633–634 [right to costs].) However, these awards must be mandatory; a discretionary award of costs is not sufficient to be considered reversible error. (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406.) This makes good sense: Since nominal damages are inherently damages in name only, there is little reason to think such an award would affect a trial court's discretionary analysis of costs.

Appellants contend the fee-shifting provision of the settlement agreement is the type of mandatory award which flows from the award of nominal damages here and thus warrants reversal. The record before us in this case indicates the contract creates a right to attorney fees in the event of a dispute about the contract. The settlement agreement at issue here states, "If any legal action or any motion or other proceeding is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties *shall be entitled* to recover reasonable attorney fees and other costs and expenses incurred in any action or other proceeding, in addition to any other relief to which it or they may be entitled." (Italics added.)

While the settlement creates a right for the prevailing party to be awarded attorney fees, which party is the prevailing party—and indeed, whether *any* party is the prevailing

22.

party—is consigned to the broad discretion of the trial court.  Fee-shifting provisions are governed by Civil Code section 1717, which states:  "The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section .…"  (Civ. Code, § 1717, subd. (b)(1).)  "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.  The court may also determine that there is no party prevailing on the contract for purposes of this section."  (*Ibid.*)  Courts of this state have routinely found that, unless one party achieves an "unqualified victory" on all of its claims, it is within the trial court's discretion to determine which party prevailed, or indeed whether either party prevailed.  (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 973; *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 439; *Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1541.)

Here, were we to reverse and the trial court to determine a breach occurred and thus award nominal damages, the result would in no sense be an unqualified victory for appellants.  Appellants sought damages in relation to respondent's failure to defend in relation to four suits—the 3902 Action, the 1410 Action, the 2784 Action, and the 0764 Action.  Since we conclude no duty was owed to defend against the 2784 Action or the 0764 Action, it is clear appellants would have failed to prove at least half of the case they brought.  Further, appellants sought hundreds of thousands of dollars in attorney fees; being awarded nominal damages is hardly an unqualified victory.  As such, it would have been within the trial court's discretion to determine a prevailing party.  Since the award of attorney fees here would be discretionary in any event, we may not reverse merely because the court erred in not awarding nominal damages.

> D.     *To the extent appellants contest the trial court's failure to make a clear ruling on breach, we find no error.*

Appellants briefly suggest the trial court erred by failing to make a clear finding on breach, stating, "Having no direct ruling on breach or damages, the trial court's Ruling

is against law and in error." We do not understand appellants' suggestion that the court made no direct ruling on damages: The court's finding was expressly based on the failure of proof of damages in this case. It is unclear how the trial court could have been more direct.

We perceive no reversible error in the trial court's failure to render a clear decision on whether breach occurred. Appellants point us to no authority showing a similar case where reversible error has been found merely because a court failed to opine on a specific element of a cause of action. It is commonplace for courts to decline to reach additional elements when it is clear a party cannot prevail on one necessary element of its argument, because doing so is unnecessary to resolve the case. (See, e.g., *Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 754, fn. 10; *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 746 ["Courts do not decide abstract questions of law."].) We find no error based on appellants' argument here.

> ### E. *The trial court appropriately exercised its discretion in denying appellants' motion for a new trial or for a different judgment.*

Appellants also assert the trial court erred by failing to grant their motion for a new trial pursuant to section 657. Although not entirely clear, appellants suggest the motion should have been granted under section 657, subdivisions (6) and (7), namely that there was "[i]nsufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law" and there was an "[e]rror in law." (§ 657, subds. (6), (7).)

Appellants fail to cite to anything in the record concerning their motion for a new trial, which alone is grounds for rejecting their argument. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.) Moreover, appellants simply rehash arguments discussed above, suggesting that because they presented an amalgamated billings file, they introduced sufficient evidence to be awarded damages.

24.

For the reasons given above, we continue to reject that argument here. The trial court did not abuse its discretion in denying the motion for a new trial simply because appellants submitted a billing file that was not meaningfully differentiated.

Additionally, appellants assert the trial court erred in failing to grant a new trial because it refused to exercise its discretion under section 662. Section 662 provides that, following a court trial, the court "may vacate and set aside the statement of decision and judgment and reopen the case for further proceedings and the introduction of additional evidence." Essentially, appellants claim the court should have reopened the case to allow them to submit additional evidence further breaking down the attorney fees by suit so they could recover damages for the suits the court determined *were* covered by the indemnification agreement. They argue they did not know the court might require such a further breakdown of damages, and they were therefore denied the opportunity to present evidence of how the damages broke down by case.

There are two problems with this argument. First, the trial court *did* signal the need to break down the damages in its ruling on the summary judgment/adjudication motions. As referenced above, the court noted it appeared claims related to some cases, such as the 1410 Action, were likely not covered by the indemnification and defense clause, while claims related to other cases, such as the 3902 Action, likely were covered. Among the reasons the court denied appellants' summary judgment motion was that even if appellants proved a breach, "[appellants] have failed to provide evidence showing how they calculated the damages they incurred as to each of their claims. They only state that they incurred $172,579.23 for the period between the settlement agreement and the resolution of the dispute with Maddox, without explaining which defense costs were incurred for defending each separate case." Thus, appellants knew from the summary judgment decision that separate computations of damages for each different tendered claim were probably necessary. This occurred before the parties agreed to submit the matter to the trial court on the written submissions already lodged.

25.

Second, nothing in appellants' motion for a new trial suggested they had made any effort to disaggregate the attorney fees into separate matters. Appellants' counsel submitted a new declaration with the motion for a new trial, but in doing so, made absolutely no effort to show which billings were associated with the 3902 Action, and which were associated with the 1410 Action, and thus might arguably be covered. Based on this, the trial court could have well concluded appellants could not provide such a breakdown. We cannot find the court abused its discretion here: There simply was no real indication in the motion for a new trial that appellants would or could present the court with an accounting of the attorney bills separated by matter, especially since appellants had had multiple opportunities to do so by that point. There was no reason to believe reopening the evidence would have been anything but futile.

## DISPOSITION

The trial court's orders are affirmed. Respondent shall recover its costs on appeal.


HILL, P. J.

WE CONCUR:


PEÑA, J.


MEEHAN, J.

26.